**Chau Minh TRINH, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–95–333–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 22, 1996.

Discretionary Review Refused
Dec. 11, 1996.

T. Richard Alley, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney; Betty Marshall and Chuck Mallin, Assistant Chiefs of the Appellate Division; John A. Stride, Mitch Poe, and Barry Shelton, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before DAY, J., and H. TOD WEAVER, J., Retired (Sitting by Assignment), and CHUCK MILLER, J. (Sitting by Assignment).

## OPINION

H. TOD WEAVER, Justice (Assigned).

Appellant Chau Minh Trinh was convicted by a jury of the offense of aggravated robbery with a deadly weapon, to-wit: a firearm. The jury assessed punishment at 99 years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine of $10,000.

Appellant brings three points of error. Under points of error one and two, which are joined for argument, he asserts error by the trial court at the guilt-innocence phase of the trial in admitting evidence of gang membership of a defense alibi witness, which was offered by the State only for impeachment of that witness, where there was no evidence connecting the gang affiliation between appellant and the alibi witness. The State claims that any error in admitting the evidence complained of by appellant under points of error one and two were waived, and in the alternative, claims such error was harmless.

Under point of error three, appellant claims the trial court erred at the penalty phase of the trial in permitting opinion testimony as to his bad reputation by a State's witness who did not know him and who was not familiar with his reputation prior to the offense, contrary to the provisions of TEX. R. CRIM. EVID. 405(a).[1] The State concedes error under this point, but here again claims the error was harmless. Because we hold appellant waived the error of which he complains under points of error one and two, and

---

1. The rules cited in this opinion are those contained in the Texas Rules of Criminal Evidence, unless otherwise indicated.

because we find the error complained of under point of error three was harmless, we affirm the judgment of the trial court.

Although appellant does not challenge the sufficiency of the evidence to support the conviction, we will nevertheless set forth pertinent facts, particularly as they pertain to our harmless error holding under the third point of error.

The first witness called by the State was the victim, 23–year–old Stephanie Nguyen. In 1995 Nguyen, then a college student, lived with her parents and her two brothers in Grand Prairie, Tarrant County. On February 6th of that year, a Monday, Nguyen returned home for lunch shortly before noon. She parked her car in the garage, entered the house through the connecting doorway, and switched off the alarm system. As Nguyen walked towards the kitchen, the front door bell rang. When she went to a side window to look outside, she saw someone, an Asian youth, she did not recognize. The visitor asked if her brother Steven was home. She responded negatively and the visitor walked away.

Nguyen then started to the kitchen, but once again the doorbell rang. She returned to the door, and through the side window, saw the same individual holding an aqua cassette box. The man stated that he had her brother's tape, so Nguyen decided to open the door to the extent that she could retrieve the tape. She reached to fasten the security chain as she turned the handle of the door. As she did so, the man burst into the house. Nguyen attempted to reach the alarm panic-switch, which was set back some eight feet from the door, but the intruder prevented her from doing so by grabbing her hair. As they struggled, she saw the intruder pull a silver gun from his pants. Nguyen stopped struggling, and the intruder told her to lay on the floor, which she did face-down. As she lay there, the intruder retrieved a pillow, put it over her head, and placed his leg on her back. She also felt a sharp object prodding her head and she was petrified. Peering under the pillow she could see people walking around.

Nguyen complained that her back was hurting, and the man removed his leg, but

then she began to hyperventilate. In order to get up from the floor, and perhaps have the opportunity to reach a telephone, she pretended to suffer from seizures and requested medication. She was allowed to rise and recognized the man by her as the one who forced his way in. She also saw one individual dressed entirely in black, including black ski-mask and gloves, and another individual wearing a bandanna over his lower face.

Nguyen observed the intruder standing in the hallway and saw the man in the ski-mask dismantling the family entertainment center. She also saw other men taking her brothers' valuables wrapped in a sheet and dragging them outside through the garage door. Jewelry and top-of-the-line electronic equipment, valued at approximately $20,000, were taken by the intruders during the robbery. After the men left, Nguyen called the police and her father.

Later, Nguyen selected the photograph of appellant, Chau Minh Trinh, from a police photospread. She testified that the intruder without his face concealed, and who robbed her and used a gun on her, was the appellant. Appellant was specifically identifiable at the time of the offense because he had a tattoo of a teardrop by his left eye.

## Points of Error One and Two

### Impeachment of Appellant's Alibi Witness

After the State rested at the guilt-innocence phase of the trial, appellant called two alibi witnesses, both of whom testified appellant was with them at another location at the time the robbery occurred.

The first alibi witness was Hanh Tran who operated a bakery and coffee shop in Grand Prairie. She testified appellant was a regular customer at the coffee shop and was there almost daily. She testified that appellant was in the shop or the vicinity drinking coffee with Ricki Hanh or playing with fireworks between 10:30 in the morning and 2:00 in the afternoon on the date of the robbery, February 6, 1995. She saw them both inside and outside the store during that time. She

could not say with certainty that appellant was in the store between 11:15 and 12:15, but that he was there during that time frame. In recalling that appellant was in the shop on February 6, 1995, Tran recalled that the Dragon Dance, celebrated as a part of the Vietnamese culture, was on that date and she remembered seeing appellant playing with fireworks and seeing appellant and Hanh throwing fire crackers at each other outside the shop. The State introduced some evidence tending to impeach the testimony of Tran. However, appellant does not, by this appeal, attack the State's efforts to impeach Tran.

The other alibi witness, Ricki Hanh, who is of Vietnamese culture, lived in an apartment with appellant at the time. Hanh testified he was at the coffee shop drinking coffee with appellant from "10:00 something to 1:00 something" on February 6, 1995, that the Vietnamese dragon dance celebration was on that day, that he remembered going around the fireworks for a couple of minutes, and also watching the dragon dances, that he took appellant back to the apartment, at "like 1:00 something," and that appellant had been with him "ever since the whole day." On cross-examination, Hanh testified that he could specifically say that he was with appellant at about 11:45 on February 6, 1995.

After appellant passed Hanh as a witness, the attorney for the State, at a bench conference, addressed the trial court regarding the State's desire to go into Hanh's gang affiliation with the "Angels" for impeachment purposes only, and stated that Hanh had a bias to lie for appellant because "they" are or have been affiliated with a gang.[2] Appellant's objection to the State going into Hanh's gang affiliations during cross-examination was overruled. The State then proceeded during cross-examination, and in the presence of the jury, to inquire about Hanh's gang affiliation. The State's attorney asked him if he was a member of a gang called the "Angel Boys" or was associated with them as of the time of the offense in this case.[3] Appellant's objection to the question was overruled, and Hanh answered "no" to that question. He denied that he was a member of or associated with a gang called the "Angel Boys" as of the time of the robbery, and later testified that he had never been associated in any way with that gang. Hanh also testified on cross-examination by the State that he did not remember telling Officer Paul Berg he was a member of that gang at the time of the robbery, and then later specifically denied he had ever spoken to Officer Berg about his association with that gang. Officer Berg's rebuttal testimony, as discussed below, contradicts the testimony of Hanh in this respect.

After appellant rested, the State called five rebuttal witnesses for the purpose of impeaching Hanh's alibi testimony.[4] The testi-

2. In support of its claim that it could go into Hanh's gang affiliation, the State told the trial court that Hanh, "has admitted being an Angel Boy to an officer.... We would like to establish that he has a motive specifically for impeachment and bias.... [T]o lie for ... Chau Minh Trinh, who is also, as we understand, a part of the ... California Angels Boys or Angel Boy or something." Then in support of the relevance of such information, the State told the trial court that, "this witness has a bias to lie for this Defendant, Chau Minh Trinh, because they are or have been affiliated with a gang—." Appellant's attorney, in objecting to the State's going into this line of questioning with Hanh, stated that he did not believe that "this evidence of gang affiliation is going to show any kind of conviction. It's not even a pending charge.... [T]here is no basis upon which his affiliations would ever become relevant in this trial as to this case and certainly do not establish in and of and by themselves any bias or motive in this case. They are not relevant. Even if they were rele-

vant, their probative value is substantially outweighed by the prejudicial impact." Appellant objected under Rules 401 and 403 and further stated that "gang affiliation would only go to show criminal conduct or specific instance of character, which is not permitted by Rule 405, ·608 or 609."

3. Appellant objected on the basis that the question was not proper under Rule 401 and 403 and as to relevance, and that it was not proper impeachment of character of the witness under Rules 405, 608 or 609.

4. Two of the State's rebuttal witnesses, Officer Steve Smith, an officer in the gang unit of the Arlington Police Department, and Officer Mark Ogrodnik, a special agent with the United States Immigration and Naturalization Service, both testified, without objection, that Hanh's reputation in the community for truth and veracity was bad. An Trung, an investigator for the Gang Prosecution Unit in the District Attorney's Office

mony of only two of the State's rebuttal witnesses touched upon Hanh's gang affiliation.

Officer Paul Berg, a detective in the Gang Unit Investigative Division of the Grand Prairie Police Department, with particular training and experience in relationship to crime in the Asian community, testified he knew Hanh for over a year and that he had spoken with him about his association with the gang "Angel Boys." When the State asked Officer Berg what Hanh had told him, appellant objected.[5] That objection was sustained, and the jury was instructed to disregard. The State then continued its efforts to get this line of questioning into evidence. It asked Officer Berg if he ever had a conversation with Hanh about his association with the "Angel Boys," to which he answered "yes." Appellant's attorney then stated that "unless this is only for a yes or no, it would call for hearsay and we object." The trial court responded that it called for a "yes or no" and Officer Berg, without further objection, answered "Yes, he did."

The State's next question to Officer Berg was "Did Ricki Hanh ever tell you whether he was an associate of the Angel Boys?" Appellant's objection to the question as leading and his objection "as to hearsay and the other objections previously urged" were overruled, and Officer Berg was allowed to answer "Yes, he did." The State then asked Officer Berg, "[W]hat did he tell you?" Appellant's objection as to hearsay was sustained, but his request that the jury be instructed to disregard the comment was overruled.

The State then again asked Officer Berg the question, "Did he tell you he was?" Appellant's objection to the question as calling for hearsay under Rule 401 and 403 was overruled, and Officer Berg was allowed to answer "Yes, he did." It appears that this answer by Officer Berg (indicating that Hanh told him he was associated with the "Angel Boys" gang) is the only testimony in the record that ties the alibi witness, Hanh, to a gang. This line of testimony by Officer Berg, which was offered by the State to impeach Hanh, forms the basis of appellant's points of error one and two.

Afterwards, the State further attempted to show that Hanh was an "Angel Boys" gang member, as was appellant, for the purpose of creating a connection between them and to show a motive and bias for Hanh to lie. This attempt was made by calling Officer Tim Gilpin, a detective assigned to the Northeast Street Crimes Gang Unit of the North Richland Hills Police Department.

After Officer Gilpin testified that Hanh's reputation in the community for truth and veracity was bad, the State's attorney, in proceedings at the bench, advised the trial court he would like to ask Officer Gilpin whether he has personal knowledge of whether Hanh is an "Angel" and whether appellant is an "Angel." Appellant's attorney commented that there had been no connection of gang affiliation between Hanh and appellant, to which the trial court responded, "They are getting ready to make the connection," and regarding which the State's attorney stated, "It's about to happen." Then followed the State's voir dire examination of Officer Gilpin, outside the presence of the jury, from which it became apparent that Officer Gilpin could not, from his personal knowledge, connect Hanh and appellant as members of a gang. Appellant's objection to this line of testimony by Officer Gilpin, as to relevancy and as not connecting appellant to gang affiliation, was sustained, and the State pursued this line of questioning no further. The appellant did not at that time, or at any other stage of the trial, request that the jury

---

of Tarrant County, who came from Vietnam and who was familiar with the Chinese New Year and the Vietnamese celebration thereof, testified that in 1995 the Vietnamese celebrated the Dragon Dance on February 4th and 5th, and not on February 6th as testified to by Hanh.

5. Appellant's attorney objected on hearsay, claiming that any response would be hearsay as to his client; objected to relevance under Rule 401; objected that any probative value it may have is substantially outweighed by prejudicial effect to his client under Rule 403; and further objected because it goes to specific instances of character that are impermissible under Rules 405, 608, and 609.

be instructed to disregard any testimony regarding Hanh's gang affiliation.

■ The credibility of a witness may be attacked by any party, including the party calling him. Rule 607. Generally, Rules 608, 609, 610, and 612 control how the credibility of a witness may be attacked. Bias or motive on the part of a witness is a specific concern of Rule 612(b). All relevant evidence is admissible, except as otherwise provided by constitution, by statute, by the Texas Rules of Criminal Evidence, or by other rules prescribed pursuant to statutory authority. Rule 402. Showing bias on the part of a witness has a tendency to make the facts to which he testifies less probable in the eyes of the jury than they would be without such testimony; evidence showing bias is relevant and admissible unless it is excluded by constitution, statute, or rule, or its probative value is substantially outweighed by its prejudicial effect; and the trial court has considerable discretion as to how bias is proven and as to what collateral evidence can be introduced for that purpose. *See McKnight v. State,* 874 S.W.2d 745, 746–48 (Tex.App.—Fort Worth 1994, no pet.).

Issues involving the impeachment of a witness by evidence of his gang affiliation have been previously addressed by this court. In *McKnight,* we upheld the actions of the trial court in admitting evidence implying that the defendant and a defense witness were members of or were connected with a gang, for the purpose of impeaching the defense witness. The court cited *United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984), for the proposition that the government can impeach a defense witness by showing that both the defendant and the witness were members of a brotherhood whose members were sworn to lie on behalf of each other, and that common membership of a witness and a party in an organization, even without proof that the witness or party has personally adopted its tenets, is probative of bias.

In *Bridgewater v. State,* 905 S.W.2d 349 (Tex.App.—Fort Worth 1995, no pet.), the defendant was on trial for capital murder. The State called Andre Crosby to testify against the defendant as a condition of Cros-

by's plea bargain agreement for the same robbery and murder. Crosby refused to testify against the defendant and denied any involvement in the crime even though he had pled guilty and had testified during his own trial that he was involved in the crime. This court upheld the trial court's actions in allowing the State to question Crosby, its own witness, about a street gang for the purpose of demonstrating Crosby's motive and bias for changing his testimony. *Id.* at 352.

The Houston Fourteenth District Court of Appeals has also upheld the actions of the trial court in allowing cross-examination of a defense witness as well as the defendant concerning their affiliation with a gang for the purpose of showing possible bias in the witness' testimony. *See Bynum v. State,* 731 S.W.2d 661 (Tex.App.—Houston [14th Dist.] 1987, no pet.).

■ We find the above cited cases to be distinguishable from the circumstances in the present case. In all of those cases there was evidence indicating or at least implying that the witness sought to be impeached, and the defendant shared some common interest in a gang or some gang affiliation. Such is not the case here. There is no testimony in the record that connects Hanh and appellant through a gang affiliation, and the State admits in its brief that it did not make the connection. Likewise, there is no evidence showing or indicating illegal or distasteful activities or undertakings by the "Angel Boys" gang. In fact there is no evidence reflecting the nature of that gang, and, at most, the record reflects only the "naked" accusation by Officer Berg's hearsay testimony that Hanh was a member of or was associated with a gang. We find the State did not show a right to impeach Hanh's alibi testimony based on such asserted gang affiliation between him and the appellant and that appellant timely objected to that line of questioning.

The State nevertheless argues that points of error one and two should be overruled because appellant waived any error involving evidence of Hanh's gang affiliation by failing to request that such testimony be stricken at the close of the evidence. In support of this

argument, the State relies upon *Fuller v. State*, 829 S.W.2d 191, 198–99 (Tex.Crim.App. 1992), *cert. denied*, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993), which involved a similar situation where the State failed to prove a connection between the defendant and the asserted gang activity. There the court stated:

Thus, in spite of his clearly expressed desire to exclude the evidence, we are constrained by rules of procedure to hold that Appellant forfeited the right of appellate review by his failure to move that it be stricken after the close of the State's evidence.

*Id.* at 198.

■ The State's argument is well taken, and we hold appellant waived his right to complain on appeal of the admission of the evidence bearing on Hanh's gang affiliation by failing to timely request that it be stricken after it became clear that the State could not connect appellant to such gang activities. *See id.* at 198–99.

Having found that appellant waived the matters of which he complains under points of error one and two, we need not address the harm analysis. Points of error one and two are overruled.

### Point of Error Number Three

### Testimony of Bad Reputation from Unqualified Witness

Under the third point of error, appellant claims the trial court erred during the punishment phase of the trial in permitting a State's witness, An Trung, to testify that appellant had a bad reputation. On cross-examination it was revealed that Trung did not know appellant and was not familiar with his reputation prior to the date of the offense in this case. The State admits Trung's testimony regarding appellant's reputation was precluded under Rule 405(a). *See Ross v. State*, 763 S.W.2d 897, 904 (Tex.App.—Dallas 1988, pet. ref'd). The State contends, however, that the error was harmless.

At the punishment phase, and prior to calling Trung, the State called two other witnesses who testified regarding appellant's reputation. One was Officer Mark Ogrodnik,

an officer with the United States Immigration and Naturalization Service. The other was Officer Tom Kantos, an officer with the University of Texas at Arlington Police Department. Both testified that appellant's reputation in the community for being peaceful and law-abiding was bad. Appellant does not allege error regarding the reputation testimony given by Officer Ogrodnik and Officer Kantos and admits both of them were familiar with appellant prior to the date of the offense.

The State next called An Trung, an investigator for the Gang Prosecution Unit for the District Attorney's Office in Tarrant County. He was previously an undercover police officer for the City of Fort Worth. On direct examination, Trung testified that he knew appellant, after which the following exchange occurred between Trung and the State and defense attorneys:

*DIRECT EXAMINATION*

Q. And have you formed an opinion in your own mind as to Chau Minh Trinh's nature for being peaceful and law-abiding?

A. Yes.

Q. What is that opinion?

A. Bad.

Q. And since you have known Chau Minh Trinh, have you heard of his reputation in the community for being a peaceful and law-abiding person?

A. Reputation, bad.

. . . .

*CROSS–EXAMINATION*

Q. Mr. Trung, did you know Chau Minh Trinh prior to February 6th, 1995?

A. No, sir.

The defense counsel then directed the following comments and motion to the trial court:

Judge, we're going to need to take a matter up. I have an objection. I don't believe that he has the proper predicate to state the responses that he did. We move for a mistrial.

The motion for mistrial was denied by the trial court. As stated above, the State concedes that the trial court erred in admitting

Trung's testimony respecting appellant's bad reputation. It is that testimony that forms the basis for appellant's complaints under the third point of error, and our review of that point is limited to the question of whether the admission of such testimony was harmless.

Appellant argues that the probative value of Trung's testimony regarding appellant's bad reputation was substantially outweighed by the unfair prejudice to him that resulted therefrom. *See* Rule 403. He further argues that where such evidence is "the only evidence offered"[6] at the penalty phase of a trial, it cannot be considered harmless beyond a reasonable doubt under TEX. R. APP. P. 81(b)(2).[7]

■ In performing a harm analysis, an appellate court should calculate as much as possible the probable impact of the error on the jury. *See Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). Factors for the reviewing court to consider include: (a) the source of the error; (b) the nature of the error; (c) whether or to what extent it was emphasized by the State; and (d) its probable collateral implications. *Id.* at 587. Moreover, the court should consider how much weight a juror would probably place upon the error and whether declaring the error harmless would encourage the State to repeat it with impunity. *Id.* at 587. The existence of overwhelming evidence may also be a factor to consider in determining whether the error had any effect on the jury. *Id.* at 588.

The source and nature of the error in the instant case was the admission into evidence of the testimony of Trung, an unqualified witness, regarding appellant's bad reputation.

In arguing that harm was shown, appellant relies upon the facts that he was shown to be eligible for probation and that the jury, nev-

ertheless, assessed the maximum punishment of 99 years' confinement.

However, the State did not emphasize this inadmissible testimony and made no reference to the same in its arguments to the jury, and, as mentioned above, two other witnesses had previously testified, without objection, that appellant's reputation was bad.

Although there was no evidence that appellant had previously been convicted of a felony, Benny Hamilton, a court officer for the Probation Department of the Community Supervision and Correction Department, testified that appellant was on probation as of February 6, 1995, the date of the crime.

Respecting the impact of the crime, Bryan Nguyen, the victim's father, testified that he had concerns regarding crime and his children, that he had told the children to be careful, that he still has concerns because there are other participants to the crime that have never been caught, and that he cannot sleep well, is worried about his wife and children, and is so afraid because of the crime that he constantly calls home from work. The victim, Stephanie Nguyen, testified that:

> We are not happy anymore. We are constantly worried about the other people that are out still. And there are a lot of nights still that I sit in the living room and I cannot sleep. Every noise drives me crazy. And I'm afraid for my mom when she is home alone or when I go to school and I have to drive home by myself. We're just not happy anymore.

■ Accordingly, we find that the error had no probable implications on the punishment assessed by the jury, and that the declaring of the error to be harmless will not encourage the State to repeat the error with impunity.

---

6. Appellant appears to argue that Trung's testimony was the only evidence bearing on his bad reputation. We note, however, as discussed above, that two other witnesses, Officer Ogrodnik and Officer Kantos, had testified as to his bad reputation at the punishment phase prior to the time Trung was called as a witness.

7. That rule provides that if the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to punishment.

Furthermore, given appellant's calculated entrance into the victim's home, his use of an assortment of weapons, his pack of accomplices, the stripping of the victim's family possessions, and the impact of the crime on the victim and her family, the jury had every reason to assess him the maximum sentence. Accordingly, we hold that the admission of Trung's testimony regarding appellant's reputation was harmless beyond a reasonable doubt. *See Davis v. State,* 840 S.W.2d 480, 486 (Tex.App.—Tyler 1992, pet. ref'd); *Ross,* 763 S.W.2d at 904–05. The third point of error is overruled.

The judgment of the trial court is affirmed.