**Opinion issued May 18, 2017**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-16-00435-CR

_____

**JONATHAN RAWLINS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 184th District Court
Harris County, Texas
Trial Court Case No. 1471355

# O P I N I O N

A jury convicted appellant, Jonathan Rawlins, of the first-degree felony

offense of murder and, after finding the allegations in an enhancement paragraph

true, assessed his punishment at thirty-eight years' confinement.[1]  In his sole issue, appellant contends that the trial court erroneously admitted evidence that he, the complainant, and other witnesses were affiliated with street gangs.

We affirm.

## Background

### A.    *Factual Background*

On May 17, 2015, the Chancellors Family Center in southwest Houston hosted a pool party that had been heavily advertised on social media.  Hundreds of people attended the party that evening, including the complainant, Ernest "Emo" Moore, his cousin, Francois Calvin, and his friends, Serpio Horne, Craig Bell, and Terrell Sanders.  Moore, Bell, and Sanders were all members of 103, a street gang affiliated with the Third Ward area of Houston.

Around 10:30 or 11:00 p.m., after the men stopped by a friend's birthday party at a bar, Calvin drove the group to the pool party.  When the group arrived at Chancellors and Calvin drove around looking for a parking spot, Sanders mentioned that he recognized several of the cars in the parking lot and he had concerns over who was present at the party.  Moore and Sanders debated over whether to enter the party, and, ultimately, Sanders decided to stay in the parking lot, while Moore, Calvin, Horne, and Bell decided to go into the party.

---

[1]    *See* TEX. PENAL CODE ANN. § 19.02(b) (West 2011).

After walking into the party, Calvin saw a few people he recognized, but then his group was almost immediately surrounded by a group of twenty or thirty men, including appellant, who was wearing a gray tank top, navy blue or black shorts, and water shoes. Calvin testified that no one else there was wearing a gray tank top, and he also stated that appellant had a "lazy eye" and a distinctive haircut. Appellant, who was a member of the YMG street gang affiliated with southwest Houston, approached Moore, cracked his knuckles, and said, "Emo, you know what this is." Calvin testified that appellant appeared very angry and like he "was ready to throw a punch." Calvin stepped in front of Moore to try to diffuse the situation, but appellant responded to Calvin by saying, "You can't help him." Moore jumped in front of Calvin, and he and appellant started fighting. The other members of the group with appellant started hitting Calvin, Horne, and Bell.

The fight lasted for about two or three minutes. Calvin then heard an unknown female voice yell, "They got a gun." The fight broke up, and people started running in every direction. Calvin managed to run out of Chancellors into the parking lot, where he saw Moore. Moore and Calvin agreed that they should leave Chancellors and started running to Calvin's car. Before Moore could reach the car, appellant walked out from beside the driver's side of the car with his arm extended, holding a gun. Calvin estimated that he was about fifteen yards behind Moore, also running to his car, but he could see that the person holding the gun was wearing the exact

3

same thing as the person who had confronted Moore inside Chancellors. Calvin testified that this person was now wearing a bandana around his face, but Calvin could still recognize him, and he identified this person in court as appellant.

Once appellant started firing shots at Moore, Calvin yelled at Moore to run, and he started to run back toward friends to ask for a gun. Moore also started running, and appellant pursued him, continuing to shoot at Moore. Calvin saw Moore fall down, and he saw appellant stand over Moore and continue shooting. Calvin then saw appellant jump into an SUV, which sped away. Moore suffered gunshot wounds to his shin, thigh, and head, and he died as a result of his injuries.

Calvin remained at the scene for over an hour, and he spoke with one of the detectives for about five to seven minutes before he had to leave to assist his aunt, who had been in a car accident. After Calvin left the scene, he attempted to discover appellant's identity on his own by asking friends and family members. Three days later, a friend showed Calvin some pictures, and Calvin immediately recognized appellant by his haircut, his eye, and his skin color. Calvin called the detectives and relayed this information, as well as appellant's name and nickname. The detectives later showed Calvin a photo-array, and he identified appellant as the shooter.

Serpio Horne testified that, within five minutes of his group's entering the pool party, about twenty or thirty men completely surrounded them, focusing on Moore. He identified appellant in court as the person who started arguing with

4

Moore. Calvin tried to intercede, but appellant refused to listen, and a fight broke out. After the fight stopped and the group scattered, Horne started searching for his friends. When he heard gunshots, he found Bell and hid him in a patch of bushes, and he continued searching for Moore and Calvin. Horne testified that he "knew it was better for [him] to go searching than [Bell] because [he was] not a familiar face." He stated that Bell was probably more familiar, and, when asked why, he testified, "I just know for a fact that I'm not into all the drama part." After continuing to hear gunshots, Horne ran back to Bell and told him they needed to get to Calvin's car. When they arrived at Calvin's car, they found Calvin, who was in tears, and he led them over to where Moore was lying.

Horne, who was incarcerated in the Harris County Jail on an unrelated charge at the time of the trial, also testified that, on the morning of his testimony, he had a confrontation with appellant in the jail's holdover cell. While Horne was being searched, appellant, who appeared ready to fight, walked by and told Horne, "Boy, you a snitch. You going to take the stand on me." When Horne walked into the holdover cell, appellant and another man hit him. Appellant hit Horne in the eye, and he had difficulty seeing out of his eye when he testified. To defend himself, Horne grabbed a crate that was in the holdover cell, but the detention officers broke up the fight before it could escalate further. Later, the man who was with appellant made a hand gesture as if he were firing a gun and pointed at Horne.

5

Craig Bell acknowledged that he, Moore, and Sanders were all members of 103. Bell testified that their group was surrounded as soon as they walked into Chancellors and that everyone who surrounded them was being aggressive, with no one person in particular leading the other group. He stated, "[E]verybody want Emo for some reason. I don't know why. Hate. Something. Everybody wanted Emo." Bell identified appellant at trial as one of the men who assaulted Moore, but he could not identify who started the fight.

## B.     *Evidence of Appellant's Gang Affiliation*

Defense counsel filed a pretrial motion in limine, seeking to exclude references to certain matters before the jury. Counsel stated, "Specifically, the defendant moves to exclude any reference to the fact that the defendant is a gang member unless it can be shown to the Court outside the presence of the jury that the evidence is relevant to a material issue in the case, that the witness has personal knowledge of that fact and that such evidence's probative value is not substantially outweighed by its prejudicial effect."

After voir dire but before testimony began, the trial court held a hearing on appellant's motion in limine. The trial court initially required the State to approach the bench before addressing appellant's gang affiliation. The prosecutor then stated that he would like to address the matter during his opening because the issue would come in through appellant's custodial statement, in which appellant admitted that he

6

was a member of the YMG gang.  The prosecutor argued that appellant's custodial statement provided two theories of motive: (1) Moore and appellant were in rival gangs, and (2) at one point Moore had some involvement with the mother of appellant's child.  Defense counsel argued that appellant's statement, in which he denied shooting Moore, was "not clear at all that [the shooting was a] gang beef," but instead appellant's and Moore's disagreement "may be over some dispute over a woman."

The trial court stated:

As long as [the State] can link it up that [appellant and Moore] are in rival gangs, then I find that's relevant, which is motive, which is relevant to intent.  And so, it would be very probative on that issue.  I know that gang—just the mention of gang membership is prejudicial to your client.  But in this particular circumstance, I specifically find for the record that the probative value outweighs the prejudicial value.

Later that day, defense counsel requested that the State redact a portion of appellant's custodial interview in which he discussed his gang affiliation.  The trial court stated, "That goes to motive and intent.  And I find that the probative value outweighs the prejudicial value."  The trial court granted defense counsel a running objection.

Houston Police Department Detective K. McDonald testified that he and his partner, Detective M. Holbrook, interviewed appellant after he had been arrested on an unrelated charge.  The trial court admitted a video recording of appellant's custodial interview.  During his statement, appellant admitted that he was a member of YMG.  Detective McDonald testified that "YMG" stands for "Young Mob

7

Gorillas" and that it is a "gang, clique, specific to an area in Houston." In the interview, appellant admitted that he was at the pool party and that he saw the fight involving Moore, but he repeatedly denied his involvement in the fight. He stated that he knew Moore, but the party was the first time they had ever met face to face. In 2013 or 2014, he had words with Moore over social media concerning the mother of appellant's son, whom Moore had asked out. Appellant stated that he and Moore made eye contact at the party, but they did not speak, and they did not exchange hostile looks. Appellant first stated that he left the party after the fight and before the shooting, but he eventually told the detectives that he had seen a man affiliated with another gang from the southwest side of Houston run toward Moore and then he heard gunshots. Appellant also stated that people on the streets were "trying to make it seem like [YMG] had beef with them people from Third Ward [103]. Some people do, some people be for them hard. Some people don't." He stated YMG was not the only gang present at the party, but the "whole Southwest" was there.

Appellant called James Cryer as a witness to address Horne's testimony regarding the jailhouse altercation. Cryer testified that he did not know appellant and he had no connection with the shooting of Moore. However, he was also incarcerated in the Harris County Jail, on an unrelated charge, and he witnessed the altercation between appellant and Horne. According to Cryer, Horne was the one who instigated the fight by calling appellant a racial slur and saying, "[Y]ou know

8

you killed my brother." Horne then started hitting appellant without provocation, and appellant defended himself. On cross-examination, Cryer admitted, without objection, that he is a member of the Crips. He testified that he did not know anything about appellant's gang affiliation, and the trial court sustained appellant's objection to a question suggesting that appellant was also a member of the Crips.

No witness specifically testified that Moore's gang, 103, and appellant's gang, YMG, were rivals beyond appellant's statement in his custodial interview that some in his gang had a "beef" with Moore's gang. At the conclusion of the State's case, defense counsel did not re-urge his objection to the relevancy of appellant's gang affiliation, and he did not request an instruction to disregard this evidence. The State did not mention appellant's gang affiliation during closing arguments.

The jury found appellant guilty of murder and, after finding the allegations in an enhancement paragraph true, assessed his punishment at thirty-eight years' confinement. This appeal followed.

### Admission of Evidence

In his sole issue, appellant contends that the trial court erroneously conditionally admitted evidence that he, Moore, and several witnesses were affiliated with criminal street gangs.

## A.    Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Bowley v. State*, 310 S.W.3d 431, 434 (Tex. Crim. App. 2010).  We will not reverse unless the record shows a clear abuse of discretion. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003).  A trial court abuses its discretion only when the court's decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Id.*

Texas Rule of Evidence 401 provides that evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence.  TEX. R. EVID. 401.  Irrelevant evidence is not admissible. TEX. R. EVID. 402.  The trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or the needless presentation of cumulative evidence.  TEX. R. EVID. 403.

Evidence of a crime, wrong, or other bad act is not admissible to prove a person's character in order to show that, on a particular occasion, the person acted in conformity with that character, although this evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  TEX. R. EVID. 404(b). "[G]ang membership is highly inflammatory character evidence likely to cause an

10

individual to be convicted for being a bad person apart from sufficient indicia of guilt regarding this particular crime." *Galvez v. State*, 962 S.W.2d 203, 206 (Tex. App.—Austin 1998, pet. ref'd). However, evidence of gang membership is admissible during the guilt-innocence phase to show bias, motive, or intent, or to refute a defensive theory. *See Smith v. State*, 355 S.W.3d 138, 154 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *see also Vasquez v. State*, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002) ("[G]ang-affiliation is relevant to show a motive for a gang-related crime."); *Tibbs v. State*, 125 S.W.3d 84, 89 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (holding that evidence of gang membership is admissible "if it is relevant to show a non-character purpose that in turn tends to show commission of the crime").

## B.  *Preservation of Error*

Under Rule of Evidence 104(b), "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist. The court may admit the proposed evidence on the condition that the proof be introduced later." TEX. R. EVID. 104(b). Under this doctrine of "conditional relevancy," a trial court may admit evidence that initially appears irrelevant on the condition that the proponent introduces additional evidence demonstrating the relevancy, "or 'connect[s] it up,' at a later time." *See Powell v. State*, 898 S.W.2d 821, 829 (Tex. Crim. App. 1994). If the proponent of the evidence

11

does not present sufficient "connecting" evidence by the close of their case, the opposing party must renew his original objection to the evidence and request that the trial court instruct the jury to disregard the evidence. *Id.* If the opposing party fails to object and request an instruction to disregard at the close of evidence, the party does not preserve a complaint about the evidence for appellate review. *Id.*; *Williams v. State*, 82 S.W.3d 557, 563 (Tex. App.—San Antonio 2002, pet. ref'd); *Heidelberg v. State*, 36 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

The Court of Criminal Appeals has addressed this specific preservation question in the context of a witness implying that the defendant was a member of gang. *See Fuller v. State*, 829 S.W.2d 191, 196–97 (Tex. Crim. App. 1992), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995). In *Fuller*, the defendant objected to a witness's testimony suggesting that he was a member of the Aryan Brotherhood, arguing that the testimony was not relevant and should not be admitted because the State could not prove that the defendant was actually a member of the gang or subscribed to the gang's belief system. *Id.* at 196. The trial court overruled the objection, stating that it expected the prosecutor to "prove those things up," and it allowed the testimony, "pending the fact that [the prosecutor] does prove it up." *Id.* at 197. The testimony offered by the State, however, did not establish that the defendant was a member of the Aryan

12

Brotherhood; instead, the testimony only suggested that the defendant "once mentioned that organization in conversation, and that he might have expected it to furnish him protection while in prison." *Id.* at 198. The Court of Criminal Appeals noted that "[w]ithout other evidence sufficient for a rational finding that [Fuller] was actually a member of such organization or that he subscribed to its canon of violence, the testimony in question did not increase the probability that he would be violent in the future." *Id.* The court further noted that the evidence of illegal gang activity "was vulnerable to a motion to strike at the conclusion of the State's case, even if it was not objectionable on relevancy grounds when offered." *Id.*

Ultimately, the Court of Criminal Appeals held that Fuller failed to preserve his complaint about the gang evidence for appellate review. *Id.* at 198–99. The court noted that Fuller's counsel repeatedly objected on relevancy grounds throughout the trial to evidence of gang membership and that "the basis for his objection ultimately proved meritorious." *Id.* at 198. However, every point at which counsel objected to this evidence "came well before it was clear that the State would produce no further evidence to show [Fuller's] membership in the Aryan Brotherhood." *Id.* The court concluded that because Fuller did not move after the close of the State's evidence that the evidence of gang membership be stricken, he failed to preserve a complaint about the evidence for appellate review. *Id.*

The Court of Criminal Appeals further explained its rationale:

> The rule may seem harsh to some, but it is a fundamental feature of our adjudicatory system. Simply put, a trial judge cannot err in most cases by overruling a relevancy objection so long as the challenged evidence might be "connected up" before the end of trial. In the instant case the trial court's ruling was correct when made and only became challengeable when a connection by the close of the case had not been made. And it is not the judge's duty to notice whether the evidence is eventually "connected up" in fact. Instead, the objecting party must reurge his relevancy complaint after all the proof is in, ask that the offending evidence be stricken, and request that the jury be instructed to disregard it. Otherwise, his objection will be deemed forfeited on appeal.

*Id.* at 198–99. The court stated that it seemed "probable from the record that the trial judge overruled each [of defense counsel's] relevancy objection[s], not because he actually thought the evidence to be relevant at that time, but because he wanted to give the State its full opportunity to prove that [Fuller] was, indeed, a member of the Aryan Brotherhood. Under our rules, he cannot be faulted for doing so." *Id.* at 199; *see also Fischer v. State*, 268 S.W.3d 552, 557 & n.9 (Tex. Crim. App. 2008) (noting that in *Fuller*, court held that defendant forfeited his complaint about gang activities because he did not reurge objection or move to strike evidence when it became clear that State could not prove his gang membership); *Trinh v. State*, 930 S.W.2d 214, 220 (Tex. App.—Fort Worth 1996, pet. ref'd) (holding that defendant waived appellate complaint of admission of evidence concerning his alibi witness's gang affiliation because he failed to request that evidence be stricken "after it became clear that the State could not connect [defendant] to such gang activities").

Here, in his motion in limine, appellant objected to the introduction of evidence of his gang affiliation unless the State could demonstrate that it was relevant to a material issue in the case. At a pretrial hearing, the State informed the trial court of its intent to discuss appellant's gang affiliation during opening statements and to introduce a recording of appellant's custodial interview in which he admitted his gang membership. When asked by the trial court how this evidence was relevant, the prosecutor stated that appellant and Moore, the complainant, were in rival gangs, and, thus, evidence of appellant's gang affiliation was relevant to his motive. The trial court agreed that if the State could "link it up" that appellant and Moore were in rival gangs, that evidence would be relevant to motive and intent, and the probative value of that evidence would outweigh its prejudicial effect. Later in the trial, defense counsel requested that the State redact the portion of appellant's custodial interview in which he mentioned his gang affiliation, but the trial court again stated that the evidence was relevant for motive and intent. The trial court granted defense counsel a running objection so he would not be required to object before the jury when the State eventually published the recording of the custodial interview.

Appellant argues on appeal that the State failed to prove that appellant and Moore were in rival gangs. Even if appellant is correct in this assertion, a matter we need not decide, appellant failed to re-urge his relevancy objection to the evidence

of his gang affiliation at the close of the State's case, and he did not move to strike the evidence or request that the trial court instruct the jury to disregard the evidence. Because appellant did not re-urge his relevancy objection, move to strike the evidence, and request an instruction to disregard on the basis that the State did not "connect up" that appellant and Moore were in rival gangs, he has failed to preserve for appellate review his complaint about the trial court's conditional admission of evidence of his gang affiliation. *See Powell*, 898 S.W.2d at 829; *Fuller*, 829 S.W.2d at 198–99; *Williams*, 82 S.W.3d at 563; *Trinh*, 930 S.W.2d at 220.

To the extent appellant complains on appeal that the admission of evidence of his gang affiliation violated Rule 404(b), we note that he did not object in the trial court on this basis. Instead, the basis for his objection in the trial court was relevancy under Rule 104(b). The Court of Criminal Appeals has held that a relevancy objection "does not preserve error concerning a Rule 404 extraneous offense claim." *Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999); *Bunton v. State*, 136 S.W.3d 355, 370 (Tex. App.—Austin 2004, pet. ref'd). We therefore hold that appellant has not preserved a complaint that admission of evidence of his gang affiliation violated Rule 404(b).

Further, to the extent appellant complains about the admission of evidence that Moore, Bell, and Cryer were all affiliated with gangs, appellant did not object

16

to this evidence in the trial court.[2]  To preserve a complaint for appellate review, the party must make the complaint to the trial court by timely request, objection, or motion.  *See* TEX. R. APP. P. 33.1(a)(1).  Because appellant failed to object to the evidence of Moore's, Bell's, and Cryer's gang affiliations, he has preserved no complaint about this evidence for appellate review.  *See Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("To avoid forfeiting a complaint on appeal, the party must 'let the trial judge know what he wants, why he thinks he is entitled to it, and [he must] do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it.'").

We therefore hold that appellant has failed to preserve for appellate review his complaints concerning the evidence of his own gang affiliation, as well as that of Moore, Bell, and Cryer.

We overrule appellant's sole issue.

---

[2]  Appellant did object to the State's suggestion that appellant, like Cryer, was a member of the Crips, and the trial court sustained this objection.

**Conclusion**

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Huddle.

Publish.  TEX. R. APP. P. 47.2(b).