**AFFIRMED and Opinion Filed December 21, 2023**



**In the**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-22-00791-CR**

**YASER ABDEL SAID, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 7**
**Dallas County, Texas**
**Trial Court Cause No. F08-33908-Y**

## MEMORANDUM OPINION

Before Justices Carlyle, Goldstein, and Breedlove
Opinion by Justice Carlyle

In a 2022 trial delayed by his twelve years in hiding, a jury convicted Yaser

Abdel Said of capital murder for the January 1, 2008 close range shooting of his

teenage daughters in the back of his taxi at the Omni Mandalay in north Irving. We

affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

Said had long mistreated his family, and on December 21, 2007, his elder

daughter A.S. emailed a trusted teacher about problems she and her younger sister

S.S. were having at home:

> [S.S.] and I were talking and we are having a lot of issues at home . . . . I
> dont want police involved until we are totally ready.. god I am so scared

right now its crazy… ok well as you know we are not allowed to date and my dad is arranging our marriage… my dad said that I cannot put it off anymore I have to get married this year that I cannot attend college without getting married . . . . [S.S.] and I have both decided that we do not hate arabs but do not want to live by the culture or marry men from over there especially men we dont know or love… we have had each others backs and have been dating… we dont know if its love or infatuation, but the point is we want our chance… my dad began checking phone records and he took my sister to the room and specifically threatened to "hurt her very badly" if she didnt tell what was going on……when we were younger he used to do things and he's started hinting at them again.. look I could go on forever he has simply made our lives a nightmare.. he's one man, not god. Someone should be able to stop him!!!!!! he can't torment us this way! He shouldn't…. anyway we are running away… hopefully before the break ends.. I know that he will search till he finds us and he will without ANY DRAMA OR DOUBT kill us…. I am worried for my mother but she would tell him out of fear… we cant bring her and I can only hope she doesnt get hurt . . . .is it illegal for [S.S.] to leave shes only 17.. how will we finish school? and can he track us from tht? should we change our names!!!? . . . . thank you soooooooooo much for everything! wish us luck. . . . WE WILL GET THE LAW INVOLVED SO PLZ KEEP THIS BETWEEN US WE NEED OUR CHANCE TO GET SETTLED BECAUSE WHEN HE GOES TO JAIL HIS BROTHERS WILL STEP IN.. WE HAVE TO THINK THIS THROUGH U DONT KNOW HOW THEY THINK.. heck I live with them and still dont understand it….life goes on..

S.S. and A.S. ultimately decided to include their mother Patricia in their plan to flee the state with their boyfriends, E.P. and Edgar. The five of them left together on December 25, after Mr. Said threatened A.S. with a gun. The group got an apartment together in Oklahoma, but returned to Lewisville on December 30 because Edgar needed to attend a family event, and Patricia told the girls she needed to run errands and visit her sister.

Unbeknownst to A.S., Patricia had convinced S.S. it would be safe to return home. When the four returned to Lewisville, E.P. went home, A.S. stayed with Edgar, and Patricia took S.S. to meet Mr. Said. Mr. Said appeared happy to see S.S. and asked about A.S., but Patricia told him A.S. was staying with a friend.

Two days later, on New Year's Day 2008, Patricia showed up at Edgar's house demanding that A.S. return home with her. As A.S. left, she warned Edgar that he had failed to protect her and would never see her again. Edgar interpreted that to mean A.S. believed she was going to die and not that she was breaking up with him. When A.S. arrived home, Mr. Said insisted on taking A.S. and S.S. out to dinner to talk. Patricia asked to come along, but Mr. Said refused.

Mr. Said left with the girls in his leased taxi around 7:00 p.m., and Edgar, who had gone with his father to bail an uncle out of jail, testified he saw the taxi on the road around that same time. According to Edgar, Mr. Said was driving with A.S. in the front seat and S.S. in the back seat. A.S. looked scared, and Edgar thought it was strange that Patricia was not with them. He and his father followed the taxi for a while, but they eventually concluded the girls seemed safe and abandoned pursuit.

At 7:29 p.m., Patricia called Mr. Said and asked if he would reconsider allowing her to join him and the girls for dinner. Mr. Said again refused and told her he was putting gas in the taxi and would be home soon.

Four minutes later, 911 dispatch received a frantic call from S.S.'s cell phone. S.S. shouted: "Help! My dad shot me! (inaudible) I'm dying!" When the operator

–3–

asked what was going on, S.S. replied: "I'm dying. That's what's up." Soon after, S.S. could be heard pleading, "Oh my God, not again! Stop it! Stop it! Stop it!" S.S. said no further words on the 911 call, but the line tragically captured another minute and a half of her dying whimpering and moaning. The call stayed connected for an additional 41 minutes while police searched for S.S.'s location.

About an hour later, they found the taxi abandoned at a taxi stand outside the Omni Mandalay. A.S. was in the front seat with two gunshot wounds to the chest, and S.S. was in the back seat with nine gunshot wounds in total. An autopsy determined four of the shots S.S. sustained were at very close range.

Mr. Said turned his phone off shortly after S.S.'s 911 call and with the help of his son and other relatives, evaded capture for more than twelve years.

At trial, Mr. Said testified he was upset that the girls ran away with their boyfriends, but he denied killing them. Instead, he claimed he pulled over at a bus station, left the girls alone in the taxi, and ran off into the woods because he was scared that the girls' friends might be following them intending to harm him. He claimed to have only learned about the murders later and saw news coverage that he thought was "un-normal" and "harsh." So he decided to continue to hide from authorities because he thought the media was steered against him by a "secret agenda," and he was afraid he would not get a fair trial.

Mr. Said acknowledged that he did not tell Patricia he was concerned people were following them when he spoke to her just minutes before S.S.'s 911 call. And

he admitted he had a nine millimeter handgun with him in his taxi that night, although he claimed he did not take it with him when he got scared and ran off into the woods.

The jury convicted Mr. Said of capital murder, and the trial court assessed the mandatory sentence of life in prison without the possibility of parole. In his sole issue on appeal, Mr. Said contends the trial court erred by allowing the State to introduce extraneous evidence that: (1) A.S. and S.S. accused him of sexual abuse in 1998; (2) Patricia filed a retaliation case against him based on threats that he would kill Patricia if she and the girls continued to pursue the sexual abuse allegations; (3) Mr. Said was abusive towards Patricia; and (4) Mr. Said threatened A.S. with a gun shortly before the murders.

We review the trial court's rulings for abuse of discretion and will uphold them if correct under any theory of law applicable to the case, even if the trial court did not articulate the correct theory. *De La Paz v. State*, 27 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Mr. Said first argues that the trial court should have excluded all evidence concerning allegations of sexual abuse and retaliation because this evidence has no probative value and constitutes improper character evidence in violation of rule 404(b). But Mr. Said was the first party to elicit evidence related to those subjects. During his cross-examination of Patricia's sister, Connie, Mr. Said's counsel asked if there was a period of time when the sisters were not close. Connie responded that

there was, and when asked when, Connie said, "When [A.S.] accused [Mr. Said] of sexual assault."

Upon receiving that answer, Mr. Said's counsel asked to approach the bench, and the trial court conducted a brief bench conference. Mr. Said asked for a running objection to any testimony concerning the sexual abuse allegations on grounds that such testimony violated the trial court's pretrial ruling on his motion to exclude extraneous offense evidence. The trial court denied that request, noting both that Mr. Said had elicited the testimony at issue and that its pretrial ruling allowed evidence of the girls' outcry as long as it did not detail the substance of the alleged sexual abuse. The trial court told Mr. Said he could get into the specifics of the abuse if he wished, and when Mr. Said resumed his cross-examination, he elicited further testimony concerning both the strength of the evidence supporting the sexual assault allegations and the girls' eventual recantations of those allegations.

Here, by first eliciting testimony concerning the sexual abuse allegations and subsequent recantations, Mr. Said waived any objection to the State introducing similar testimony on those subjects. *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993) (error regarding improperly admitted evidence is waived if that same evidence is brought in later by the defendant or by the State without objection); *see also Webb v. State*, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988) (defendant cannot complain about evidence he first elicits).

Mr. Said likewise "opened the door" for the State to present evidence concerning his previous threat to kill Patricia—the subject of the 1998 retaliation charge. *See Porter v. State*, No. 05-19-00194-CR, 2022 WL 16735369, at *7 (Tex. App.—Dallas Nov. 7, 2022, no pet.) (mem. op., not designated for publication) (citing TEX. R. EVID. 107). Patricia testified that Mr. Said threatened to kill her and her family if she did not have the sexual abuse charges dropped. She also explained that the retaliation case was based on those threats[1] and that the girls recanted their allegations. Connie testified that A.S. told her she was forced to recant the sexual abuse allegations and that her recantation was a lie. Evidence concerning the threats against Patricia was thus admissible to offer a complete presentation of the evidence relating to the girls recanting their sexual abuse allegations. *See id.*

Mr. Said next challenges the trial court's ruling to allow evidence of his prior abuse towards Patricia because the State failed to elicit evidence demonstrating the girls ever saw or knew of it. Under the doctrine of "conditional relevancy," a trial court may admit seemingly irrelevant evidence on the condition that the proponent later introduces additional evidence demonstrating its relevancy. *See* TEX. R. EVID. 104(b); *Powell v. State*, 898 S.W.2d 821, 829 (Tex. Crim. App. 1994); *Rawlins v. State*, 521 S.W.3d 863, 868 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). The trial court denied Mr. Said's motion to exclude this evidence at a pretrial hearing

---

[1] Both Mr. Said and the State reference in their arguments an allegation that Mr. Said told Patricia he would kill her and "never be found," but neither party cites to anywhere in the record showing that the "never be found" portion of the statement actually came into evidence.

based on the State's representation that it would make the connection if it needed to bring in that evidence. But after the evidence came in, Mr. Said neither renewed his original objection nor asked the court for an instruction to disregard the testimony at the close of the State's evidence and thus he has not preserved the issue for our review. *See Powell*, 898 S.W.2d at 829; *Rawlins*, 521 S.W.3d at 868–69.

Had he preserved an objection, any error in allowing the evidence was harmless. *See* TEX. R. APP. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018) ("we consider: (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error.").

Patricia testified only generally that she left Mr. Said several times over the years because he "was controlling, abusive." And in response to questions concerning why she returned to Mr. Said after the alleged sexual abuse and threats of retaliation, Patricia testified that Mr. Said "was abusive" and that she was "scared of getting hurt." She did not detail specific instances of abuse, the State did not emphasize the testimony, and the evidence of Mr. Said's guilt was overwhelming, including S.S.'s desperate, dying 911 call specifically identifying him as her killer fulfilling A.S.'s email prediction days earlier. Based on our examination of the record as a whole, we are confident that Patricia's general statements about Mr. Said

being controlling and abusive had no more than a slight influence on the jury. *See id.*

Mr. Said next contends the trial court abused its discretion by allowing testimony that Mr. Said threatened A.S. with a gun in the weeks before the murders. At the hearing on his motion to exclude, Mr. Said argued that the evidence was irrelevant, that the only person who could attest to it was an "inherently unreliable witness," and that "it would only arouse the jury's hostility against the defendant and confuse the issues." On appeal, however, Mr. Said argues that the trial court should have excluded the testimony both because it was inadmissible hearsay and because it was more prejudicial than probative.

As an initial matter, Mr. Said failed to preserve his hearsay complaint by making a timely objection in the trial court. *See* TEX. R. APP. P. 33.1(a); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (point of error on appeal must comport with trial objection). With respect to his complaint that the testimony was unfairly prejudicial for purposes of rule 403, A.S.'s boyfriend, E.P., testified that shortly before the murders, A.S. told him Mr. Said had pulled a gun on her and threatened to kill her, which is why the group decided to flee the state. Patricia testified that S.S. told her Mr. Said had threatened A.S. with a gun. This evidence was highly probative of both Mr. Said's identity as A.S.'s killer and his intent to commit the murders. We can discern nothing unfairly prejudicial about introducing evidence that an accused threatened to kill the victim with a gun shortly before the

–9–

victim was found shot to death. In any event, rule 403 requires exclusion of probative evidence only if "there is a clear disparity between the degree of prejudice" and the evidence's probative value. *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009). There is no such disparity here.

We affirm the trial court's judgment.


/Cory L. Carlyle//
CORY L. CARLYLE
JUSTICE

220791f.u05
Do Not Publish
Tex. R. App. P. 47.2(b)



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

YASER ABDEL SAID, Appellant

No. 05-22-00791-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 7, Dallas County, Texas
Trial Court Cause No. F08-33908-Y.
Opinion delivered by Justice Carlyle. Justices Goldstein and Breedlove participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 21st day of December, 2023.