**Thomas Christopher BYNUM, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. C14–86–063–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 7, 1987.

Jimmy James, Houston, for appellant.

Jim Mapel, Jim Turner, Angleton, for appellee.

Before JUNELL, SEARS and DRAUGHN, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for aggravated assault of a prison guard. Appellant was found guilty by a jury and his punishment, enhanced by a prior felony conviction, was assessed at fifteen years confinement in the Texas Department of Corrections. This sentence to be cumulated with the ten year sentence currently being served. We affirm.

Appellant, an inmate in the Texas Department of Corrections, was being transferred by bus from the Walls Unit to the Ramsey II Unit when the offense occurred. Appellant managed to release himself from his handcuffs during the first segment of the trip. When he was ordered by prison guard George Vercher to replace the cuffs, he refused and began cursing the guard. He was removed from the bus and his hands were cuffed behind his back. As he reentered the bus he spat in the face of Harold Reiling, the guard who was driving the bus. At some point during the remaining bus ride, Appellant slipped his handcuffs under his legs so that his hands were again in his lap. He then bragged about this accomplishment and for the remainder

of the trip directed a continuous stream of obscenities at the guards. At the Ramsey II Unit, Appellant's handcuffs were removed so that he could retrieve his belongings. He began his abusive tirade again and Mr. Reiling informed him that he would have to replace the handcuffs. Appellant's reaction was to spit in Reiling's face and then strike him in the face with his fist. Mr. Reiling's glasses were knocked off and broken, his mouth bloodied, and three of his teeth were loosened and later had to be removed. Mr. Reiling subdued Appellant, pushed him up against the bus, and called for help. Reiling testified that Appellant told him "he was going to get me." The other guards arrived and Appellant's handcuffs were replaced. Mr. Reiling did not strike Appellant either before or after the attack. Appellant's defense at trial was that he struck the guard in self-defense.

Appellant asserts three points of error. In point of error one, he contends that the trial court erred in allowing the State to introduce testimony suggesting that Appellant committed an extraneous offense when he told a fellow inmate to do whatever was necessary to prevent an inmate known as "Peanuts" from testifying against him at trial.

Mr. Jimmy Lawson, a correctional officer who overheard Appellant's statement to the inmate, was called to testify. Before any testimony regarding the statement was given, Appellant objected on the grounds that the statement was made while he was incarcerated and that there was no showing that he had been given Miranda warnings. The jury was retired and a hearing conducted on the admissibility of the testimony. Appellant also objected during the hearing to the relevancy of the testimony on the basis that there was no showing who "Peanuts" referred to. The trial court overruled the relevancy objection and found that Appellant's statement was made freely and voluntarily and not in response to any questions by the officer. The testimony was admitted into evidence without further objection.

Neither of these trial objections comport with the objection raised on appeal. Where the objection made in the trial court is not the same as that urged on appeal, nothing is preserved for review. *Goodman v. State,* 701 S.W.2d 850, 864 (Tex.Crim.App.1985); *Milton v. State,* 686 S.W.2d 250, 252 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd). Further, had there been a proper objection, we find that the testimony showed an attempt to prevent a witness from testifying and was admissible as evidence tending to show guilt. *Johnson v. State,* 583 S.W.2d 399, 409 (Tex. Crim.App.1979); *Rodriguez v. State,* 577 S.W.2d 491, 492 (Tex.Crim.App.1979); *See Harris v. State,* 700 S.W.2d 778 (Tex.App. —Fort Worth 1985, no pet.). Point of error one is overruled.

In his second point of error, Appellant contends that the trial court erred in admitting evidence that Appellant was a member of a prison gang known as the Texas Mafia. Appellant maintains that the purpose for offering this evidence was to show Appellant's bad character and that it was improperly admitted because Appellant's general character had not been put in issue.

The record reveals that on cross-examination the prosecutor questioned defense witness Bradford Bullock concerning his and Appellant's membership in the Texas Mafia. The witness denied membership and denied knowledge of Appellant's membership in the gang. Prior to the introduction of this testimony, Appellant's attorney objected on grounds that it was inflammatory and irrelevant to the offense charged. The trial court overruled the objection and admitted the testimony as proper to show bias and possible motivation to testify.

Appellant was also cross-examined concerning his affiliation with the Texas Mafia:

Q: Now, you and Bradford Bullock are members of the same secret prison gang called The Texas Mafia. Isn't that true?

A: That is not true.

Q: And you and Joseph Sena are members of the same secret prison gang called the Texas Mafia. Isn't that true?

A: That is not true. And the fact that it's brought up is, again, meant to confuse this jury just like that drawing right there.

Q: And you call Joseph Sena "comrade." Isn't that true?

A: No, sir. It's not true.

Q: You call certain inmates "comrade." Isn't that true?

A: No, it is not true.

. . . . .

Q: Now, one of the rules of the Texas Mafia—is it not?—is to deny there is a Texas Mafia and to deny to outsiders that you are a member of The Texas Mafia. Is that true?

MR. HOWELL: Your Honor, I'm going to object to going into any of Texas Mafia or Texas Syndicate or any of those kinds of things.

This man is on trial for one simple thing, and that is he is accused of assaulting a guard.

THE COURT: Objection overruled.

MR. HOWELL: Note our exception.

THE COURT: You may answer.

THE WITNESS: Would you please state that again?

Q: (By Mr. Johnson) Isn't it a rule of The Texas Mafia that you are to deny that The Texas Mafia exists and to deny that you are a member of The Texas Mafia to outsiders?

A: I wouldn't know that.

The State called rebuttal witnesses who testified that they knew by reputation that Mr. Bullock and Appellant were members of the Texas Mafia. Evidence was also introduced that the names of Appellant and Mr. Bullock appeared on a list of members of the Texas Mafia discovered in another inmate's cell. This evidence was admitted without objection.

 A witness may be impeached by a showing of bias or motive which tends to affect his credibility. *Hemphill v. State,* 634 S.W.2d 78, 80 (Tex.App.—Austin 1982, pet. ref'd). Where a witness testifies to facts material to the accused's defense it is then proper for the State to show, if possible, that the witness was biased in favor of the defendant. *Daywood v. State,* 157 Tex.Crim. 266, 248 S.W.2d 479, 483 (1952). Further, it has been held proper to seek to establish the defense witness' bias by subsequently questioning the defendant on the same matter. *Daywood v. State,* 248 S.W.2d at 484. Considerable latitude is permitted in cross-examination when the purpose is to reveal facts which will inform the jury of the attitude, motive or interest which may be influencing the witness' testimony. *Ward v. State,* 474 S.W.2d 471, 477 (Tex.Crim.App.1972). Trial courts have considerable discretion as to how and when the bias of a witness may be proved, and as to what collateral evidence is material for that purpose. *Rovinsky v. State,* 605 S.W.2d 578, 580 (Tex.Crim.App.1980); *Ricondo v. State,* 657 S.W.2d 439, 445 (Tex. App.—San Antonio 1983, no pet.). The probative value of the evidence must be balanced against the risk that its admission into evidence will result in undue prejudice, embarrassment or harassment to either a witness or a party, misleading or confusing the jury. *Carrillo v. State,* 591 S.W.2d 876, 886 (Tex.Crim.App.1979). We do not find that the trial abused its discretion in allowing the witness to be questioned concerning his and Appellant's membership in the Texas Mafia. "A witness' and a party's common membership in an organization, even without proof that the witness or party has personally adopted its tenets, is certainly probative of bias." *United States v. Abel,* 469 U.S. 45, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). The evidence was sufficiently probative of Mr. Bullock's possible bias toward Appellant to justify its admission into evidence.

 The cross-examination of Appellant concerning his and Mr. Bullock's membership in the Texas Mafia was similarly proper under the above cited rules. In addition, a review of the record reveals that Appellant's attorney objected to the line of questioning only after Appellant was asked whether one of the rules of the Texas Mafia was to deny membership. Appellant had already answered numerous questions about membership. An objection to the examination of witnesses or to the

admission of evidence must be urged at the earliest opportunity or it is not preserved for appellate review. *Cisneros v. State,* 692 S.W.2d 78, 82 (Tex.Crim.App.1985). Further, when an objection is made, it must not only specify what is objected to but also set forth the grounds for the objection. *Cisneros v. State,* 692 S.W.2d at 83; *Gentsch v. State,* 654 S.W.2d 768, 770 (Tex. App.—Houston [14th Dist.] 1983, no pet.). Appellant's objection was not only untimely but was not sufficiently specific to preserve any error. We hold that the trial court did not err in allowing cross-examination of Mr. Bullock and Appellant concerning their affiliation with the Texas Mafia for the purpose of showing possible bias in Mr. Bullock's testimony. Point of error two is overruled.

In his third point of error, Appellant asserts that the trial court erred in allowing Appellant to represent himself during trial because he did not voluntarily and knowingly waive his right to counsel.

The record reflects that after the last defense witness was excused, Appellant announced to the court that he intended to testify. The jury was immediately retired and Appellant's attorney attempted to dissuade him. Appellant insisted on testifying even after his attorney and the court advised him of the dangers and disadvantages. He was told that his testimony would open the door to cross-examination concerning his prior convictions and to impeachment. After the admonishment, Appellant was allowed to call himself to the stand and testify in a narrative form as to his version of the offense. Appellant's attorney asked no questions during the direct testimony but raised a number of objections during the State's cross-examination. The State's cross-examination focused on Appellant's prior convictions and his and his witnesses' possible affiliation with the Texas Mafia.

We do not agree with Appellant's argument that he was "abandoned" by his attorney and, therefore, was representing himself while he was on the stand. An accused's decision to testify is his own personal right. *Sapata v. State,* 574 S.W.2d 770, 771 (Tex.Crim.App.1979). Appellant was fully advised of the risks of his taking the stand by his attorney and by the trial court. He was admonished by both that the State would be entitled to *fully* cross-examine him and attempt to impeach his testimony. Despite these warnings Appellant insisted upon exercising his right to testify. Further, contrary to Appellant's assertions, we find that he was fully represented by counsel. His attorney was present at all times and fully participated in the trial. He also played an active role during the State's cross-examination of Appellant. The extent of attorney participation in any trial is attributable to the trial strategy of each defendant's attorney. We find no merit in Appellant's contentions and overrule his third point of error.

Accordingly, the judgment of the trial court is affirmed.