**AFFIRMED as MODIFIED; and Opinion Filed October 26, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00785-CR**

**RONDETRIC TURNER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F22-40109-R**

# MEMORANDUM OPINION

Before Justices Carlyle, Smith, and Kennedy
Opinion by Justice Kennedy

Appellant, Rondetric Turner, pleaded guilty to the offense of evading arrest or detention with a vehicle and true to two sentencing enhancement paragraphs. A jury found appellant guilty of the charged offense, found the enhancement paragraphs to be true, and assessed appellant's punishment at 45 years' confinement in the Texas Department of Criminal Justice, Institutional Division. On appeal, appellant seeks a new punishment hearing and reformation of the trial court's judgment by challenging various evidentiary rulings and identifying errors in the

judgment. We affirm the trial court's judgment as modified herein. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

Shortly after midnight on January 5, 2022, City of Mesquite Police Officer Preston Moehring initiated a traffic stop of a red Chrysler 300 for not having a license plate or working taillights. The traffic stop occurred on the frontage road of Interstate 30 near the intersection of Morgan Drive. Officer Moehring parked his squad car behind the vehicle on the shoulder of the frontage road. As he walked around the back of his squad car and made his way to his car's front bumper, he saw the vehicle's brake lights re-engage, and the vehicle began to drive away, making an immediate turn onto Morgan Drive. Officer Moehring ran back to his car, notified dispatch of the situation, and engaged in a vehicle pursuit. He followed the vehicle through a residential neighborhood onto Morgan Circle, a cul-de-sac, and observed the driver, later identified as appellant, and two passengers run from the vehicle. Officer Moehring exited his vehicle and pursued appellant on foot. He lost track of appellant but located one of the passengers hiding under a parked pickup truck. Additional police officers arrived to assist in pursuing the men, including a K-9 unit and helicopter. Officer Jessica Donalson, a K-9 handler, and her dog Gamble located the second passenger. The officers eventually found appellant hiding in a car that was parked in the backyard of a nearby residence. Appellant was arrested for the felony offense of evading arrest or detention with a vehicle.

–2–

At trial, appellant pleaded guilty to the charged offense and the State offered, and the trial court admitted into evidence, his judicial confession and stipulation of evidence, in which appellant admitted the allegations in the indictment were true and correct. The trial court then read the jury charge advising the jury that appellant had pleaded guilty and instructing the jury to find appellant guilty as charged in the indictment. The jury followed the trial court's instruction and returned a verdict of guilty. The trial court then proceeded with the punishment phase of trial during which appellant pleaded true to the enhancement paragraphs.

During the punishment phase, the State called various officers who were involved in the pursuit and arrest of appellant on January 5, 2022: an investigator with the Dallas County District Attorney's office, who proved up appellant's prior convictions;[1] Sedrick Williams, an individual who claimed to have been the victim of an aggravated assault by appellant; officers involved in responding to and investigating that aggravated assault; a T-Mobile employee regarding break-ins at various T-Mobile stores and the theft of phones and cash; and officers who

---

[1] Certified copies of appellant's prior convictions for eight felony offenses and two misdemeanor offenses were introduced into evidence establishing appellant committed (1) the felony offense of burglary of a habitation on March 30, 2012, (2) the felony offense of possession of a controlled substance, methamphetamine, on July 23, 2012, (3) the felony offense of criminal mischief on December 19, 2012, (4) the felony offense of burglary of a habitation on December 30, 2012, (5) the misdemeanor offense of possession of marijuana on February 21, 2016, (6) the misdemeanor offense of evading arrest or detention on April 21, 2016, (7) the felony offense of unlawful possession of a firearm by a felon on April 26, 2016, (8) the felony offense of attempted unlawful possession of a firearm by a felony on June 22, 2018, (9) the felony offense of evading arrest or detention on July 10, 2018, and (10) the felony offense of evading arrest or detention on August 19, 2018. The State also presented evidence of several unadjudicated extraneous offenses, including the aggravated assault of Williams, unlawful possession of a firearm by a felon, possession of marijuana, and felony theft.

investigated those break-ins and thefts, who discussed tracking the phones and appellant's involvement in those thefts.

Williams, the complainant in the unadjudicated aggravated assault matter, testified appellant shot at him multiple times on July 8, 2020, after he got into an altercation with appellant's sister at a gas station. Williams and appellant were acquainted with each other because they each had a child with the same woman. Williams indicated he tried to call appellant and explain what had transpired at the gas station, but appellant did not answer his phone. Williams left the gas station and proceeded to an apartment complex behind the gas station where he had parked his car. Williams stated that as he walked to the apartment complex, he saw appellant in the complex's parking lot. He tried to talk to appellant, but appellant did not want to talk and pulled an assault rifle and began shooting at him. Williams ran, but was shot five times, twice in the right leg, once in the left leg, once in the stomach, and once in the right forearm/hand. Someone other than Williams called 9-1-1. Williams was transported to the hospital where he remained for approximately a month and a half, during which time he underwent multiple surgeries. Williams indicated that it took him three to four months to walk again and that, after two years, he still has trouble with the injuries he sustained in this shooting, including loss of some function in his right hand.

On cross-examination, Williams admitted that he had a 9-millimeter gun in his pocket when he was shot, and that he told the police who came to interview him

–4–

at the hospital that another man he knew was with appellant, and that man shot at him too. With respect to a second shooter, the following exchange took place between defense counsel and Williams:

> Q. Do you recall telling the police that you were also shot by a man named Jalee Echols?
> A. Huh-uh.
> Q. You don't recall telling that to the police?
> A. No. I didn't tell them that.
> Q. Okay.

Defense counsel attempted to question Williams about his gang affiliation and asked, "And you know the police have you down as a documented gang member, right?" The prosecutor objected to the question and pointed out the State had a motion in limine addressing this topic. The trial court sustained the prosecutor's objection and instructed the jury to disregard the question and answer.

In a subsequent hearing outside the jury's presence, defense counsel questioned one of the officers who responded to the July 8, 2020 aggravated assault call and established she included in her report that Williams was a documented gang member and that the gang unit responded to the call. Defense counsel then requested that the court allow her to recall Williams to question him about being a documented gang member. The State objected on relevance and improper character evidence grounds. The trial court denied defense counsel's request but explained, "If certain doors are open, it's a possibility."

In a continuation of this hearing outside the presence of the jury, defense counsel also stated that she would like to ask Williams about two pending misdemeanor cases against him in Rockwall County, one for possession of marijuana and one for unlawful carrying of a weapon, to determine whether he had made any deals with the prosecution or if there had been any promises on the table in exchange for his testimony. The trial court allowed defense counsel to question Williams outside the presence of the jury about the pending charges in Rockwall County for possession of marijuana and unlawful carrying of a weapon, as well as a prior conviction in Rockwall County for unlawful carrying of a weapon. Williams indicated that he had pending charges in Rockwall County but had not been promised anything by the Rockwall District Attorney's Office in exchange for his testimony in this case, did not know what was going to happen in the Rockwall cases, and was not yet represented by counsel in those cases.

Defense counsel then questioned Williams about a subsequent shooting involving Williams's mother's boyfriend. Williams indicated that in 2021 his mother's boyfriend shot at him and hit him in the stomach on the left side. A case was pending against that individual in Dallas County at the time of this trial. Williams did not know the status of that case. Defense counsel requested that she be permitted to get into the Rockwall County cases and the Dallas County case against appellant's mother's boyfriend. She indicated she thought these cases were relevant to show bias on Williams's part to cooperate with the prosecution. She

further argued that some of Williams's injuries from the incident involving Williams's mother's boyfriend coincided with the shooting involving appellant. The trial court stated, "Your objections are noted and overruled." Williams did not testify again in front of the jury.

Appellant, who was thirty years old at the time of trial, testified that he has three children, ages three, six, and ten. Prior to his arrest for evading arrest or detention, appellant worked as a forklift operator and lived with the mother of his three–year-old child. Appellant denied having shot Williams. Appellant indicated he obtained the cell phones that were stolen from T-Mobile because he needed money to pay his attorney. Appellant admitted he was guilty of all the offenses except the shooting of Williams.

Appellant called his mother, the mother of his three-year-old child, and a friend to testify as to his caring nature and about how he provides for his family.

The jury charge at the punishment phase of trial advised the jury that appellant had pleaded true to the enhancement paragraphs and instructed the jury to find both enhancement allegations to be true and assess appellant's punishment at confinement for a term not more than 99 years nor less than 25 years. The charge also included an instruction on the issue of extraneous crimes or bad acts. More particularly, the charge instructed:

> You may consider evidence of an extraneous crime or bad act in assessing punishment even if the defendant has not yet been charged with or finally convicted of the crime or act. However, you may

consider such evidence only if the extraneous crime or bad act has been shown by the State beyond a reasonable doubt to have been committed by the defendant or is one for which the defendant could be held criminally responsible.

The prosecution does not have to prove an extraneous crime or bad act beyond all possible doubt. The prosecution's proof must exclude all reasonable doubt concerning the extraneous crime or bad act.

Therefore, if you find and believe beyond a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may consider such evidence in assessing the defendant's punishment. However, if you have a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may not consider such evidence in assessing punishment.

The jury followed the trial court's instructions and found the enhancement paragraphs to be true and assessed appellant's punishment at 45 years' confinement in the Texas Department of Criminal Justice. Appellant filed a motion for new trial asserting the verdict is contrary to the law and the evidence. The trial court denied appellant's motion and this appeal followed.

DISCUSSION

I. **Evidentiary Rulings**

A. *Standard of Review*

In his first five issues, appellant asserts the trial court abused its discretion in excluding evidence of Williams' gang affiliation, the fact that Williams was the victim of a subsequent shooting incident and pending criminal charges against Williams. More particularly, in his first and third issues, appellant asserts evidence

of Williams's gang affiliation was relevant to punishment and had a significant bearing on Williams's credibility as a State's witness against him. In his second and fourth issues, appellant asserts evidence Williams had been involved in a separate shooting incident, which was the subject of a pending case against the alleged shooter, had a bearing on the credibility of Williams's claim he still suffers from the injuries inflicted by appellant and motive for testifying against appellant. In his fifth issue, appellant asserts evidence of Williams's pending criminal charges establishes a motive for Williams to testify as a State's witness.

We examine a trial court's decision to admit or exclude evidence for an abuse of discretion. *Cuadros-Fernandez v. State*, 316 S.W.3d 645, 656 (Tex. App.—Dallas 2009, no pet.). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* "Trial courts have broad discretion in their evidentiary rulings and . . . trial courts are usually in the best position to make the call on whether certain evidence should be admitted or excluded." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We uphold the trial court's ruling on the admissibility of evidence if it is reasonably supported by the evidence and is correct under any theory of law applicable to the case. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

## B. Evidence at the Punishment Phase

Article 37.07 of the Texas Code of Criminal Procedure governs the admissibility of evidence at the punishment phase of trial. Article 37.07, section 3(a)(1) provides, in relevant part:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CODE CRIM. PROC. ANN. art. 37.07 § 3(a)(1). Trial courts have wide latitude in determining the admissibility of evidence during the punishment phase of trial. *Rogers v. State*, 991 S.W.2d 263, 266 (Tex. Crim. App. 1999). Admissibility of evidence at the punishment phase is a function of policy rather than relevancy because by and large there are no discrete factual issues at the punishment phase. *Id.* at 265. Relevance during the punishment phase of a non-capital trial is determined by what is helpful to the jury. *Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004).

The rules of evidence permit a defendant to cross-examine a witness concerning that witness's possible bias, self-interest, or motives for testifying. TEX. R. EVID. 613(b); *Johnson v. State*, 490 S.W.3d 895, 910 (Tex. Crim. App. 2016).

Cross-examination, however, is not wholly unfettered. *Reynolds v. State*, 371 S.W.3d 511, 520 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). The defendant's right to confront witnesses does not prevent a trial court from imposing reasonable limits on cross-examination into the bias of a witness. *Hurd v. State*, 725 S.W.2d 249, 252 (Tex. Crim. App. 1987). In fact, trial judges retain wide latitude to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009).

The proponent of evidence that allegedly establishes bias must show that the evidence is relevant by demonstrating that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party. *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004). The trial court does not abuse its discretion in excluding evidence of the alleged bias if the proponent of the evidence does not establish the required nexus. *Smith v. State*, 352 S.W.3d 55, 64 (Tex. App.—Fort Worth 2011, no pet.).

### C. Evidence of Gang Membership

In his first issue, appellant contends evidence of Williams's gang membership was relevant to his punishment because it had a direct bearing on whether the State proved beyond a reasonable doubt that appellant committed the extraneous aggravated assault offense. He contends that because the gang unit responded to the

shooting and Williams admitted that he told detectives that there was a second person present who may have also shot at him the shooting may have been gang related. Thus, claims appellant, Williams's gang affiliation may have played a role in the shooting, and evidence of his gang affiliation could have impacted the jury's consideration of the extraneous offense in deliberating about his punishment.

Gang affiliation is relevant to show a motive for a gang-related crime. *Vasquez v. State*, 67 S.W.3d 229, 239 (Tex. Crim. App. 2002). Appellant presented no evidence the shooting was gang related. Rather, the evidence established the shooting was in response to an altercation that occurred between Williams and appellant's sister at a gas station shortly before the shooting. Consequently, the trial court did not abuse its discretion in excluding evidence of Williams's alleged gang affiliation on relevance grounds. We overrule appellant's first issue.

In his second issue, appellant contends that evidence of Williams's gang membership bears on his veracity and bias and should have been admitted. Usually, it is the State seeking to offer evidence of the accused and a witness's common gang affiliation to establish a witness's bias in favor of the accused. *See, e.g., United States v. Abel*, 469 U.S. 45, 48–49 (1984); *McKnight v. State*, 874 S.W.2d 745, 746–47 (Tex. App.—Fort Worth 1994, no pet.); *Bynum v. State*, 731 S.W.2d 661, 664 (Tex. App.—Houston [14th Dist.] 1987, no pet.). Here, it was the defense seeking to use evidence of Williams's alleged gang affiliation to attack his character and credibility. But the defense did not establish any predicate for the introduction of

–12–

such evidence. Not only did the defense fail to establish which gang Williams was allegedly affiliated with, it failed to establish such gang had a reputation that would taint Williams's character or call his veracity into question. Accordingly, the trial court did not abuse its discretion in excluding evidence of Williams's alleged gang membership for impeachment purposes. *See Trinh v. State*, 930 S.W.2d 214, 219 (Tex. App.—Fort Worth 1996, pet. ref'd) (evidence of witness's gang membership not admissible to impeach witness where there was no evidence of nature of gang witness was alleged to be a member of). We overrule appellant's third issue.

## D. Evidence of Subsequent Shooting

In his second issue, appellant asserts evidence Williams sustained injuries from a subsequent shooting should have been admitted. Williams testified he was the victim of two shooting incidents, one involving appellant and the other occurring in 2021 and involving appellant's mother's boyfriend. Appellant contends that the injuries Williams suffered during the second shooting could have exacerbated the injuries he sustained when he was shot by appellant. He contends that the exclusion of this evidence gave the jury the impression that appellant was the sole person responsible for Williams's ongoing difficulties with his gunshot injuries and may have impacted the jury's decision on punishment.

When a defendant seeks to elicit testimony from a witness but is precluded from doing so, error is preserved by: (1) calling the witness to the stand outside the presence of the jury and having him answer specific questions; or (2) making an

offer of proof of the questions he would have asked and the answers he expected to receive had he been permitted to question the witness. *Love v. State*, 861 S.W.2d 899, 900–01 (Tex. Crim. App. 1993). Appellant elicited testimony from Williams about the shooting incident involving his mother's boyfriend and the fact that he was shot in the stomach but did not ask him any specific questions to determine the extent of his injury or whether the second shooting impacted his recovery from the injuries he sustained during the July 8, 2020 shooting incident. Accordingly, appellant failed to preserve this complaint for appeal. We overrule appellant's second issue.

In his fourth issue, appellant contends evidence of the pending Dallas County case against Williams's mother's boyfriend, in which Williams was the complainant, should have been admitted for impeachment purposes. More particularly, appellant contends the existence of the pending criminal case against Williams's mother's boyfriend placed Williams in a vulnerable relationship with the State and gave Williams a motive to testify against him or bias in favor of the State. Appellant contends that not only would the State need Williams's testimony as the complaining witness in the case against Williams's mother's boyfriend, but it would also be in control of how to pursue that case.

The proponent of impeachment evidence must establish a causal connection or logical relationship with the State or potential bias or prejudice for the State or the testimony at trial. *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998). The proponent does not have to establish actual bias. *Id.* at 634, n.4. Rather,

–14–

the proponent must make a showing of potential bias. *Id.* To establish relevance for the purpose of showing bias or a motive to testify, the proponent must establish a causal connection or logical relationship between the evidence and the vulnerable relationship or potential bias or prejudice for the State. *Irby v. State*, 327 S.W.3d 138, 149 (Tex. Crim. App. 2010).

Appellant has not shown that Williams was motivated to testify favorably for the State. Williams testified that he did not know the status of the case against his mother's boyfriend, whether the case was going to trial, or the identity of the prosecutor in that case. We conclude appellant has failed to establish any logical connection or nexus between Williams's status as a complainant in the 2021 shooting and the allegations against appellant. Thus, the trial court did not abuse its discretion in excluding evidence concerning the case associated with the second shooting. We overrule appellant's fourth issue.

### E. Evidence of Pending Charges against Williams

In his fifth issue, appellant contends that the trial court should have allowed him to present evidence of Williams's pending criminal charges in Rockwall County as evidence of Williams's self-interest in being cooperative with the State if doing so would benefit him in his pending cases. Again, as stated *supra*, the proponent of impeachment evidence must establish a causal connection or logical relationship with the State or potential bias or prejudice for the State or the testimony at trial. *Carpenter*, 979 S.W.2d at 634. To impeach a witness with evidence of pending

criminal charges, the proponent must establish that the evidence is relevant. *Id.* at 634. Evidence that a witness is facing pending charges is not relevant for the purpose of showing bias or a motive to testify without some causal connection or logical relationship between the evidence which might show bias or motive and the vulnerable relationship or potential bias or prejudice for the State. *Irby*, 327 S.W.3d at 149. All witnesses with pending charges, or who have some other vulnerable status, are not automatically subject to cross-examination about that status regardless of any lack of relevance to the witness's testimony. *Id.* at 152. The mere existence of pending charges is not always automatically relevant to show the witness's potential bias and motive to testify favorably for the State. *Id.*

As the proponent of the evidence allegedly demonstrating bias or motive, appellant bore the burden to establish a nexus or logical connection between Williams's testimony and his potential motive to testify against him. *See Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004); *Smith*, 352 S.W.3d at 67. The pending cases against Williams were being handled by the Rockwall County District Attorney's Office, not the Dallas County District Attorney's Office. Moreover, when Williams testified in appellant's case, he did not have an attorney representing him the Rockwall County cases, and he had not made any deals with either the Dallas County or the Rockwall County prosecutors in exchange for his testimony in appellant's case. Appellant failed to establish a causal connection or logical relationship between Williams's pending charges and his testimony in this case. *See*

–16–

*Carpenter*, 979 S.W.2d at 634–35. Accordingly, the trial court did not abuse its discretion in refusing to allow defense counsel to question Williams regarding his pending charges. We overrule appellant's fifth issue.

## II. Modification of Judgment

In his sixth and seventh issues, appellant contends the judgment contains errors and requests that we reform the judgment to speak the truth. The judgment identifies "Robert Francis, Visiting Judge," as the Judge Presiding. However, the reporter's record reflects that the Honorable Jennifer Bennett presided over the proceedings in this case with the exception of the pronouncement of appellant's sentence, which was pronounced by Judge Francis. Additionally, the judgment reflects that Bill Knox was the attorney who represented appellant at trial. The record reflects that, in addition to Knox, appellant was represented at trial by Meredith Behgooy and Taylor Johnson.

We have the authority to modify the trial court's judgment to make the record speak the truth. TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). We sustain appellant's sixth and seventh issues and modify the judgment to reflect that, in addition to Robert Francis, Visiting Judge, the Honorable Jennifer Bennett was a Judge Presiding in this case and that, in addition to attorney Knox, attorneys Meredith Behgooy and Taylor Johnson represented appellant at trial.

–17–

## CONCLUSION

As modified, we affirm the trial court's judgment.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

Do Not Publish
Tex. R. App. P. 47

220785F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RONDETRIC TURNER, Appellant

No. 05-22-00785-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District Court, Dallas County, Texas Trial Court Cause No. F22-40109. Opinion delivered by Justice Kennedy. Justices Carlyle and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

to reflect that the Honorable Jennifer Bennett was a presiding judge and that Meredith Behgooy and Taylor Johnson were attorney's for the defendant.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 26th day of October, 2023.