

# NUMBER 13-23-00224-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ARMANDO DAVID FERNANDEZ,                                          Appellant,

v.

THE STATE OF TEXAS,                                          Appellee.

## ON APPEAL FROM THE 24TH DISTRICT COURT
## OF JACKSON COUNTY, TEXAS

## MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Silva**
**Memorandum Opinion by Justice Silva**

A jury found appellant Armando David Fernandez guilty of assault family-violence, impeding breath or circulation, a third-degree felony enhanced by Fernandez's habitual felony offender status. *See* TEX. PENAL CODE ANN. §§ 12.42(d), 22.01(b)(2)(B). The jury made an affirmative deadly weapon finding and sentenced Fernandez to thirty years'

imprisonment. On appeal, Fernandez raises five issues that we reorganize as follows: (1) the evidence was insufficient to support the jury's deadly weapon finding; (2) he received ineffective assistance of counsel; (3) the trial court abused its discretion in allowing extraneous offenses to be admitted at trial; (4) the punishment charge contained incorrect enhancement language; and (5) the trial court abused its discretion during punishment by admitting copies of Fernandez's prior judgments. We affirm.

## I. BACKGROUND

On November 9, 2022, the complainant Courtney Glisson arrived home to find Fernandez, the father of her two children and on-and-off paramour of fifteen years, watching television in the living room. Glisson testified that she had recently "kicked . . . out" Fernandez so she confronted him, and the argument moved to the kitchen. There, Fernandez accused her of "being pregnant by another man." As Glisson was neither pregnant nor seeing another man, Glisson laughed at the accusation, further angering Fernandez. According to Glisson, Fernandez "got in [her] face" and began screaming. Fernandez then placed his hands around her neck and said: "It's going to end today, b[]tch. It's going to end today." Glisson testified that Fernandez squeezed her neck so tightly that she "could not breathe." Glisson described feeling "light-headed," "like [she] was getting tunnel vision" and "going to pass out." Fearing Fernandez was going to "kill [her]," Glisson grabbed a nearby rolling pin and "hit him across the side of the head with it to get him off of [her]." Fernandez released Glisson, and Glisson attempted to run out of the home. Before Glisson was able to reach the front door, Fernandez grabbed Glisson, knocking her to the floor. Glisson explained that she was ultimately able to shove

2

Fernandez off her, and once outside, she ran to a neighbor to call 9-1-1.

Fernandez left the residence before law enforcement arrived and was later found walking on a dirt road. Fernandez told law enforcement that he had instigated the encounter with Glisson but claimed his eyes were closed leading up to the moment he was hit in the head with "something wooden."[1] Fernandez maintained he did not know who struck him and postulated another individual had been present for that limited interaction. The next thing Fernandez recalled was "grabb[ing] [Glisson] by the back of the head to pull her down, to push her to the ground" before she was finally able to run out of the house. Fernandez told officers that he had been "hearing voices" before, during, and after the altercation. Fernandez was transported to the hospital, where he asked the transporting officer to borrow his phone "to tell [Glisson] not to say that he had choked her."

The State also elicited testimony from responding law enforcement at trial, including Texas Department of Public Safety Trooper Andrew Alexander and Jackson County Sherriff's Office Deputy Karl Cranek. Trooper Alexander testified that, in his training and experience, choking can result in serious bodily injury or death. Deputy Cranek testified that he observed Glisson's injuries, namely redness in her "back mid-neck area" and by her right eye.

The jury returned a guilty verdict and sentenced Fernandez following his pleas of true to the charged enhancement paragraphs. This appeal followed.

---

[1] Exhibits admitted at trial included the responding officers' body camera recordings, wherein Fernandez can be heard making these statements.

## II.    SUFFICIENCY OF THE EVIDENCE

Fernandez first argues the evidence was insufficient to support the jury's finding that he "used or exhibited a deadly weapon during the commission of the primary offense."[2]

### A.    Standard of Review and Applicable Law

In reviewing the sufficiency of the evidence to support a deadly-weapon finding, we consider the evidence in the light most favorable to the verdict and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found that the defendant used a deadly weapon beyond a reasonable doubt. *Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019). We consider whether the object in question "could be a deadly weapon *under the facts of the case*," and whether it was used during the offense. *Flores v. State*, 620 S.W.3d 154, 158 (Tex. Crim. App. 2021) (quoting *McCain v. State*, 22 S.W.3d 497, 502 (Tex. Crim. App. 2000)).

"Under the broad language in [Texas] Penal Code [§] 1.07(a)(17)(B), a 'deadly weapon' may be anything, and there is no limitation as to what type of thing may be considered a deadly weapon." *Id.* (cleaned up). "Thus, generally speaking, the nature of the object itself does not limit whether that object may be a deadly weapon; rather, it is only the manner of the defendant's use or intended use that provides any meaningful limitation to the broad statutory definition." *Id.* at 158–59 (cleaned up); *see, e.g.*,

---

[2] As the State observes in its brief, Fernandez's argument on this issue includes references and arguments regarding an indictment naming an unrelated defendant in an unrelated criminal matter and incorrectly asserts that the deadly weapon at issue is a motor vehicle. Because Fernandez's argument otherwise includes appropriate citations to the record and authority and applies the law to relevant facts, we nevertheless proceed. *See* TEX. R. APP. P. 38.1(i).

4

*Hernandez v. State*, 556 S.W.3d 308, 316 (Tex. Crim. App. 2017) (affirming deadly weapon finding where deadly weapon was water). Moreover, "the statute does not require that the actor actually intended death or serious bodily injury; the actor need only intend a use of the object in which it would be capable of causing death or serious bodily injury." *Flores*, 620 S.W.3d at 159 (cleaned up).

While hands are not deadly weapons per se, "hands[] may be deadly weapons based on their manner of use or intended use and their capacity to produce death or serious bodily injury." *Hopper v. State*, 483 S.W.3d 235, 239 (Tex. App.—Fort Worth 2016, pet. ref'd) (citing *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. [Panel Op.] 1983)). "In concluding that hands were used as a deadly weapon, Texas courts have cited injuries such as unconsciousness, vision impairment, brain injury, internal injury, and those suffered from strangulation." *Davis v. State*, 533 S.W.3d 498, 508 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd).

## B. Analysis

The evidence at trial showed that when Fernandez placed his hands around Glisson's neck, he threatened to "end [it]," squeezing her neck with enough pressure that she was unable to speak, began losing her vision and consciousness, and feared for her life. Shortly thereafter, Deputy Cranek observed redness to Glisson's neck and cheek. Although Fernandez initially made no mention of placing his hands around Glisson's neck and could not recall the circumstances resulting in being hit with a rolling pin, he later requested the opportunity to call Glisson to "tell her not to say that he had choked her." *See Gilmore v. State*, 397 S.W.3d 226, 241 (Tex. App.—Fort Worth 2012, pet. ref'd)

5

(recognizing that implausible explanations are probative of wrongful conduct and circumstances of guilt); *see also Duran v. State*, No. 13-08-00729-CR, 2010 WL 1254540, at *6 (Tex. App.—Corpus Christi–Edinburg Apr. 1, 2010, no pet.) (mem. op., not designated for publication) ("[C]onsciousness of guilt may be one of the strongest indicators of guilt, and false statements made by the defendant to cover up the crime and other subterfuge are proof of this consciousness.").

Under the facts of this case, not only *could* Fernandez's hands have been used as a deadly weapon, his hands *were* used as a deadly weapon during the offense. *See Flores*, 620 S.W.3d at 158. This evidence is sufficient to support the jury's deadly-weapon finding. *See Hopper*, 483 S.W.3d at 239–40 (collecting cases). We overrule Fernandez's first issue.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Fernandez argues there was "no written notice at all in this case" that his use of his hands as a deadly weapon would be a fact issue at trial, and therefore, his trial counsel was ineffective when he failed to object to the discussion of a deadly weapon finding during voir dire and to the inclusion of deadly weapon language in the jury charge.

### A. Standard of Review and Applicable Law

To reverse a conviction based on ineffective assistance of counsel, we must find: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced. *Andrus v. Texas*, 590 U.S. 806, 813 (2020) (per curiam) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)); *Hart v. State*, 667 S.W.3d

6

774, 781 (Tex. Crim. App. 2023). "Prejudice may be measured in one of two ways: a reasonable probability of a different outcome or a reasonable probability of a different decision by the defendant." *Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022). "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Any claim for ineffectiveness of counsel "must be firmly founded in the record[,] and the record must affirmatively demonstrate the alleged ineffectiveness." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017) (citations omitted); *see Hart*, 667 S.W.3d at 781. "[I]f the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021). A defendant's inability to make a showing under either prong defeats a claim for ineffective assistance. *Id.* at 587.

As relevant here, "[a] defendant is entitled to notice that the State will seek an affirmative finding that a deadly weapon was used during the commission of the charged crime." *Brooks v. State*, 847 S.W.2d 247, 248 (Tex. Crim. App. 1993) (per curiam); *see also Whitley v. State*, No. 13-19-00173-CR, 2020 WL 948371, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 27, 2020, pet. ref'd) (mem. op., not designated for publication). However, "[s]uch notice need not be contained in the indictment under which the defendant is ultimately tried." *Brooks*, 847 S.W.2d at 248; *see Ex parte Perry*, 483 S.W.3d 884, 899 n.82 (Tex. Crim. App. 2016) (acknowledging that the Texas Code of Criminal Procedure indicates by inference that notice of intent to seek a deadly weapon finding may be conveyed through an alternative pleading).

**B.    Analysis**

Though Fernandez is correct that the indictment was silent as to the State's intent to seek an affirmative finding of Fernandez's use of his hands as a deadly weapon, the State filed a written notice of its intent prior to trial. Thus, Fernandez was appropriately notified of the State's intention, and trial counsel's decision to decline to object to the discussion of a deadly weapon finding during voir dire and to the inclusion of deadly weapon language in the jury charge "fell within the wide range of reasonable professional assistance." *See Johnson*, 624 S.W.3d at 586; *Brooks*, 847 S.W.2d at 248; *see also Veazey v. State*, No. 06-23-00175-CV, 2024 WL 1241967, at *2–3 (Tex. App.—Texarkana Mar. 25, 2024, no pet. h.) (mem. op., not designated for publication) (finding that appellant was properly notified of the State's intent to seek an affirmative deadly weapon finding when the State filed its notice three days prior to trial). We overrule Fernandez's second issue.

### IV.    EXTRANEOUS OFFENSE EVIDENCE

Fernandez next asserts the "trial court impermissibly allowed extraneous offenses to be introduced during the trial," namely "that he had 'dope' on him and wanted to avoid bringing it into a correctional facility." *See* TEX. R. EVID. 404(b). The State argues that Fernandez failed to preserve his complaint.

Preservation of error is a systemic requirement on appeal. *Sandoval v. State*, 665 S.W.3d 496, 546 n.192 (Tex. Crim. App. 2022), *cert. denied*, No. 23-5618, 2024 WL 2116263 (U.S. May 13, 2024). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Id.* Generally, to preserve error for appellate

review, the record must show that an objection was made to the trial court, the grounds for relief were made "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context," and the trial court ruled upon the objection. TEX. R. APP. P. 33.1(a); *see Gibson v. State*, 541 S.W.3d 164, 166 (Tex. Crim. App. 2017). Although "[m]agic words are not required," the objecting party "must at least 'let the trial judge know what he wants [and] why he thinks himself entitled to it,' and he must 'do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it.'" *Hall v. State*, 663 S.W.3d 15, 38 (Tex. Crim. App. 2021) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). "If a trial objection does not comport with arguments on appeal, error has not been preserved." *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016).

Here, Fernandez asserted a relevancy objection at trial, and such objection at trial does not comport with his extraneous offense claim on appeal. *See Rawlins v. State*, 521 S.W.3d 863, 870 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) ("The [Texas] Court of Criminal Appeals has held that a relevancy objection 'does not preserve error concerning a Rule 404 extraneous offense claim.'" (quoting *Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999))); *see also Nelson v. State*, No. 03-21-00500-CR, 2023 WL 5597352, at *6 (Tex. App.—Austin Aug. 30, 2023, no pet.) (mem. op., not designated for publication) (concluding an objection to relevancy did not preserve an extraneous offense complaint on appeal); *Jimenez v. State*, No. 05-18-00848-CR, 2020 WL 5104964, at *3 (Tex. App.—Dallas Aug. 31, 2020, no pet.) (mem. op., not designated for publication) (same); *Goodwin v. State*, No. 13-12-00035-CR, 2012 WL 3590723, at *1 (Tex. App.—Corpus Christi–

Edinburg Aug. 20, 2012, no pet.) (mem. op., not designated for publication) (same). Consequently, there is nothing for us to review, and Fernandez's third issue is overruled. *See Gibson*, 541 S.W.3d at 166; *Thomas*, 505 S.W.3d at 924.

## V. JURY CHARGE ERROR

By his fourth issue, Fernandez argues the punishment charge contained incorrect enhancement language.

### A. Standard of Review and Applicable Law

The purpose of the trial court's jury charge is to instruct the jurors on the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (per curiam) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). In analyzing an alleged jury charge error, our first duty is to determine whether error exists. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we then analyze that error for harm, and the standard of review depends on whether the error was preserved. *Alcoser*, 663 S.W.3d at 165 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). If there is error and the defendant preserved the alleged error, then we must reverse if we find "some harm." *Id.*; *Almanza*, 686 S.W.2d at 171. When the jury charge error is not preserved, the court will reverse only upon a showing of "'egregious harm,' which occurs when the error created such harm that the appellant was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019); *Almanza*, 686 S.W.2d at 171. "Harm is assessed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the argument of counsel and any

other relevant information revealed by the record of the trial as a whole." *Alcoser*, 663 S.W.3d at 165 (cleaned up).

## B.    Analysis

Fernandez asserts, and the State concedes, that the punishment charge improperly instructed the jury to determine whether the State had proven beyond a reasonable doubt that Fernandez had committed the two enhancement felony offenses as indicted but did not provide an avenue for the jury to find one or both enhancements had not been proven. Finding error, we now analyze that error for "some harm" by considering the *Almanza* factors that we are required to consider.[3] *See Alcoser*, 663 S.W.3d at 165.

The record affirmatively reflects that Fernandez pleaded true to both enhancements, the State reiterated this uncontested fact during closing arguments, neither party's closing arguments focused on the impropriety of the enhancements, the enhancements are in fact proper, and Fernandez does not now argue otherwise. *See generally id.* (considering whether the issue was hotly contested, the arguments of counsel, and any other record considerations). Moreover, Fernandez's unchallenged pleas of true to the enhancement paragraphs satisfied the State's burden here. *See Donaldson v. State*, 476 S.W.3d 433, 439 (Tex. Crim. App. 2015) ("A plea of 'true' will satisfy the State's burden of proof."). Fernandez's pleas of true fixed the punishment range by law to twenty-five years' to ninety-nine years' incarceration, *see* TEX. PENAL CODE ANN. § 12.42(d), constraining the jury's ability to seek a sentence outside that range

---

[3] Fernandez objected to the charge.

of punishment. *See Donaldson*, 476 S.W.3d 439 (observing that the punishment rage is "absolutely fixed by law" where an appellant pleads true to an enhancement). Considering the entirety of the jury charge, the evidence, and arguments of counsel, and other relevant information, as well as our review of the record, we conclude that, although erroneous, the punishment charge language in this instance caused no harm to Fernandez. *See Alcoser*, 663 S.W.3d at 165. We overrule Fernandez's fourth issue.

## VI.    AUTHENTICATION

Fernandez next challenges the trial court's admission of State's Exhibits 62 through 82, copies of Fernandez's prior judgments, during the punishment phase of trial. On appeal, Fernandez characterizes the objection as an authentication challenge. *See* TEX. R. EVID. 901. The State argues Fernandez's appellate challenge does not comport with his objection. For reasons made clear *infra*, we assume, without deciding, that it does. *See Colone v. State*, 573 S.W.3d 249, 263 n.32 (Tex. Crim. App. 2019) ("It is not clear that [a]ppellant actually preserved each basis for the complaint he makes on appeal. In order to avoid a lengthy and complicated preservation analysis, we assume, without deciding, that he did.").

## A.    Standard of Review and Applicable Law

"An appellate court reviews a trial court's ruling on the admission of evidence for an abuse of discretion." *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). "The trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably." *Id.* (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

12

"The requirement of authentication or identification is a condition precedent to admissibility." *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.); *see* TEX. R. EVID. 901. Pursuant to Rule 901, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX. R. EVID. 901(a). Rule 901 "does not erect a particularly high hurdle" for authentication, *see Campbell*, 382 S.W.3d at 549, and provides a nonexclusive list of methods for authenticating evidence. TEX. R. EVID. 901(b). "Evidence may be authenticated in a number of ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); *see also De La Rosa v. State*, No. 13-18-00537-CR, 2020 WL 2610936, at *5 (Tex. App.—Corpus Christi–Edinburg May 21, 2020, pet. ref'd) (mem. op., not designated for publication).

Rule 902 governs documents which are self-authenticating. TEX. R. EVID. 902. For instance, a "domestic public document," such as a judgment of conviction, is considered self-authenticating if "it bears the signature of an officer or employee" of a Texas political subdivision or any department or agency thereof and "another public officer, who has a seal and official duties within that same entity, certifies under seal . . . that the signer has the official capacity and that the signature is genuine." *Id.* R. 902(2); *see id.* R. 902(4) (providing that copies of public documents are admissible under the same method described in 902(2)).

13

**B.      Analysis**

At trial, the following colloquy occurred:

[State:]            Now, ma'am, all of these documents, are they certified by, the misdemeanors by the county clerk, the felonies by the district clerk, or the pen packets certified by the records coordinator, PSI, of the Classifications and Records Division of the Texas Department of Criminal Justice?

[Witness:]          Yes, they are.

[State:]            Do they appear to be fair, accurate[,] and complete documents?

[Witness:]          Yes.

[State:]            Your Honor, the State would offer State's Exhibit 62 through 82.

[Fernandez:]        Your Honor, I would object to State's Exhibit 62 to 82 based on hearsay. There's these notes that are attached to the exhibits that are not certified or authenticated. I can tender the notes if you want them as well.

[Trial Court:]      Or you can return them to the State. Do you have any other objections?

[Fernandez:]        No other objections, Your Honor.

[Trial Court:]      All right. Those are admitted.

It is unclear what attached "notes" Fernandez references at trial, and no "notes" accompany the judgments. Presumably, following Fernandez's offer to "tender the notes" to the trial court and the trial court's suggestion that the notes be returned to the State, the notes, were in fact, returned and not a part of the trial (or appellate) record. In any

14

matter, on appeal, Fernandez makes no mention of the notes, focusing instead on the judgments.

Contrary to Fernandez's assertion, State's Exhibits 62 through 82 were properly authenticated as copies of official public records, containing the signature and seal of the respective clerks. *See id.* R. 902. Therefore, we conclude the trial court did not abuse its discretion in admitting the exhibits. *See Tienda*, 358 S.W.3d at 638 ("If the trial court's ruling that a jury could reasonably find proffered evidence authentic is at least 'within the zone of reasonable disagreement,' a reviewing court should not interfere." (quoting *Montgomery*, 810 S.W.2d at 391)); *see also Longoria v. State*, No. 13-15-00173-CR, 2016 WL 4045510, at *7 (Tex. App.—Corpus Christi–Edinburg July 28, 2016, no pet.) (mem. op., not designated for publication) (concluding the trial court did not abuse its discretion in admitting appellant's "pen packet" against appellant's authentication objection where "the packet bears both a purported seal and signature under the meaning of [R]ule 902"). We overrule Fernandez's fifth issue.

## VII.    CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
20th day of June, 2024.

15